STATE OF NEW JERSEY v. SYLVESTER JOHNSON, STANLEY CASSIDY AND WAYNE GODFREY, DEFENDANTS.

Argued May 19, 1958—Reargued September 8, 1958—Decided October 20, 1958.

*Mr. E. Slevenson Fluharty* argued the cause for the appellant.

*Mr. I. V. DiMartino* argued the cause for the State of New Jersey (*Mr. David D. Furman,* Acting Attorney General, and *Mr. Benjamin Asbell,* Deputy Attorney General, attorneys; *Mr. I. V. DiMartino,* of counsel and on the brief).

*Mr. Norman Heine,* Camden County Prosecutor reargued the cause for the State of New Jersey.

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant Wayne Godfrey and two others were indicted for murder. Court-assigned counsel moved for inspection of "any statement or confession" taken from defendant "which will be offered at the trial." Counsel certified that (1) inspection "is necessary for the preparation for trial and the presentation of the defense"; (2) a denial "will result in an injustice or undue hardship"; and (3) "this case requires" a favorable exercise of the court's discretion. There was no supporting affidavit, and the sole addition at argument to the bare allegations just recited was the unparticularized statement that from conversations with the prosecutor counsel detected an inconsistency between the State's version of the case and the story told by defendants to their respective counsel.

Defendant also moved for inspection of all statements, notes and memorandums made by persons whom the State intends to offer as witnesses.

The trial court denied the motions. We granted defendant leave to appeal.

I.

We shall consider first defendant's motion for inspection of any statement or confession of his own "which will be offered at the trial." The State concedes it holds a confession which it intends to offer.

In *State v. Cicenia,* 6 *N. J.* 296 (1951), this court declined to hold that a defendant has an absolute right to inspect his own statement but rejected as well the proposition that

inspection may never be ordered. The court adopted the intermediate view that inspection may be ordered if in the sound discretion of the trial judge the interests of justice should so require.

The issue arose again in *State v. Tune,* 13 *N. J.* 203 (1953). There the trial court ordered inspection but its order was reversed by a vote of four to three. Both opinions claimed adherence to the principle of *Cicenia,* but the dissenters viewed the majority application to be an effective renunciation of it. Mr. Justice Brennan said for the minority (at *page* 230) :

"But by our decision in this case we have made virtually sterile the principle of *State v. Cicenia.* .I cannot conceive of any case in which an order allowing the inspection of a confession, for example, will be sustained if we can say, as we do, that in the circumstances of this case Judge Speakman committed error in allowing an inspection."

This appraisal has since been made by others. 53 *Col. L. Rev.* 1161, 1163 (1953); 29 *N. Y. U. L. Rev.* 1140, 1141–1142 (1954); 39 *Va. L. Rev.* 976, 978 (1953).

We subscribe to the rule of *Cicenia,* now embodied in *R. R.* 3 :5–11, and also to the view of the majority in *Tune* that "sound discretion" means "one that is neither arbitrary, vague nor fanciful" (13 *N. J.* at *page* 222). In some areas an exercise of discretion must necessarily remain an intuitive response to a set of facts. Here, however, some guiding criteria can be prescribed and hence should be, to guard against arbitrariness and unequal treatment and to avoid if possible the unsatisfactory alternative of a post-trial inquiry into a claim of prejudicial error.

We start with the premise that truth is best revealed by a decent opportunity to prepare in advance of trial. We have embraced that tenet with respect to civil litigation, and absent overriding considerations, it should be as valid in criminal matters. It is of no moment that pretrial inspection is not constitutionally assured. *Cicenia v. Lagay,* 357 *U. S.* 504, 78 *S. Ct.* 1297, 2 *L. Ed. 2d* 1523 (1958). We

are not limited to constitutional minima; rather we strive for practices which will best promote the quest for truth. It may be added that although *Cicenia v. Lagay* found the Fourteenth Amendment to be unoffended, yet it observed that "it may be the 'better practice' for the prosecution to comply with a request for inspection." 357 *U. S.* at *page* 511, 78 *S. Ct.* at *page* 1301, 2 *L. Ed. 2d* at *page* 1529.

It is difficult to understand why a defendant should be denied pretrial inspection of his own statement in the absence of circumstances affirmatively indicating disservice to the public interest.

If a suspect refused to give a statement unless assured a copy, it would be an injudicious prosecutor who would not agree. And if the suspect were then represented by competent counsel, that stipulation would be required. Why, then, should the State refuse a copy to the suspect who was unrepresented and uninformed?

We must be mindful of the role of a confession. It frequently becomes the core of the State's case. It is not uncommon for the judicial proceeding to become more of a review of what transpired at headquarters than a trial of the basic criminal event itself. No one would deny a defendant's right thoroughly to investigate the facts of the crime to prepare for trial of that event. When a confession is given and issues surrounding it tend to displace the criminal event as the focus of the trial, there should be like opportunity to get at the facts of the substituted issue. Simple justice requires that a defendant be permitted to prepare to meet what thus looms as the critical element of the case against him.

■ The need for an opportunity to prepare to deal with a defendant's statement must be evident. If voluntariness is in issue, the content of the confession may be revealing. Counsel would need time to explore thoroughly the truth of the factual assertions therein, to inquire whether it contains anything more than the State knew at the time when defendant was apprehended, and to consider whether the content itself supports or negates the defendant's claim of involun-

tariness. Pretrial inspection may be equally necessary even though defendant concedes he freely gave the statement. This is so because the impact of the statement upon guilt may turn upon how the facts are stated, or upon the absence of exculpatory facts which a defendant may claim were revealed to the interrogator or would have been revealed if the inquiry had been complete. In murder cases in which guilt is not disputed, the manner of expression or the omission of palliative circumstances may have additional significance because of their influence upon the jury's determination as to punishment. Or the confession may contain prejudicial material which should be exscinded and as to which counsel should not be required to make a hurried decision in the courtroom. The possible situations may be multiplied. The virtue of the adversary approach to a trial lies precisely in the opportunity for a full and fair presentation, and hence where the State has had a unilateral examination of a defendant, he should be enabled, as far as feasible, to prepare to explore the completeness and fairness of a policeman's or prosecutor's development of the story in the confession.

In the foregoing, we speak of what *may* be the significance of pretrial inspection. The fact is that counsel for a defendant does not know or cannot be sure whether he needs the inspection until he has had it. It is no answer to say that a defendant "must remember" what he said. If the defendant actually does remember, it cannot harm the State to furnish a copy. But as every trial lawyer knows, witnesses do not recall their statements with precision or detail. And when one considers the emotional sway which likely attends a wholly voluntary confession of crime, particularly of murder, it is idle to assert that a defendant "must remember."

Against these considerations, some vagrant fears are arrayed.

Foremost is the assertion that perjury will be promoted. That many defendants falsely dispute guilt, no one will deny. But a defendant who will dispute a truthful confession hardly needs a preview to aid him. He can fabricate with or without it, and if he wishes to shade his story in

the light of forgotten details of his confession, that opportunity exists in any event since the confession will be introduced on the State's case and thus be revealed before he testifies. The fear of perjury virtually postulates universal guilt; it also impugns the demonstrated capacity of the judicial process to ferret the truth. Indeed, if the possibility of perjury is relevant, it should logically lead to a disavowal of *Cicenia* and a denial of any discretion to permit pretrial inspection. We say this because there is no way for a trial judge to make a pretrial determination as to whether a given defendant, will or will not resort to perjury. We cannot, without incongruity, both authorize a trial judge to act and immobilize him with a dread of perjury. And if the possibility of fabrication is pressed, not as the touchstone for decision of individual applications but rather as a factor to influence the formulation of some other standard for the exercise of discretion, we confess that we cannot conceive a tenable criterion which would rationally be related to that prospect.

Reference is made to "inequality" in that the State may not have pretrial discovery of a defendant. However relevant that consideration may be to the broader motion for discovery considered in "II" below, it has no bearing when a defendant seeks inspection of his own statement, and for the obvious reason that the State has had pretrial discovery of the defendant and by unilateral examination.

Nor can we detect the relevancy here of the fear that witnesses will be intimidated or worse. If a confession is voluntary, a competent defendant would remember the names of potential witnesses he mentioned. It is conceivable that the interrogation may have been so conducted that the State's representative revealed identities unknown to the defendant. The situation would be rare, and should it appear, the appropriate safeguard where necessary would be to delete the reference rather than to deny all inspection.

And lastly, reference is made to the rising incidence of crime. How that unfortunate phenomenon bears rationally upon the immediate problem is not apparent. Surely it

cannot be proposed that rules of practice be geared to foster convictions without regard to fairness to the individual. Justice requires that the innocent be acquitted. And even with respect to the guilty, it is no less imperative that convictions be fairly obtained; otherwise the judicial trial may as well be discarded and the issue of guilt left to executive determination. *People v. Hambleton,* 399 *Ill.* 388, 78 *N. E. 2d* 293, 296 *(Sup. Ct.* 1948).

There is no experience whatever to justify the fears recounted above in relation to the specific question of pretrial inspection of defendant's own statement, and from the nature of the subject we can find no reasonable basis for apprehension. It is significant that, despite *Tune,* prosecutors have quite generally permitted inspection of a defendant's statement without court order. Indeed, when at the last term we granted a motion to review an order denying inspection, the prosecutor promptly terminated the appeal by making the disclosure. We are not aware of any resulting damage to society, and until such evidence appears we prefer to pursue the course we think better suited for the revelation of truth.

In *Cicenia,* this court quoted and adopted (6 *N. J.* at *page* 301) the following passage of *State v. Haas,* 188 *Md.* 63, 51 *A. 2d* 647 *(Ct. App.* 1947):

" 'There can be no doubt that the recognition of the right in a trial court to permit the defendant to examine his confession in advance of the trial was not recognized at common law. But law is a growth and a great many matters, commonplace to us now, were not thought of many years ago. * * * The tendency in the courts of this country is to permit discretion in the trial judge. The argument made against any such discretion is based upon a fear that the State, which is charged with the prosecution of crime, may be hampered in its duty by the disclosure of its evidence to those charged with offenses. Whatever merit that argument has as applied to a situation where it is contended that the accused has a right to inspect the evidence, it has no application, we think, to a situation where the trial judge in each case and on each application, determines what should be done in the interest of justice. There are cases in which it would be clearly unjust to deny such an application and, on the other hand, cases are conceivable in which it might improperly hamper the prosecution to grant such

an application. We do not understand that the court below decided that the appellees were entitled to this disclosure as a matter of right.'"

In *Haas* the Maryland court added that "there seems to be a measure of elemental justice in permitting one accused of crime to see a confession alleged to have been made by him, which he expects to be produced against him at his trial" (51 *A. 2d* at *page* 653). That observation is so universally true that little need be shown upon defendant's application to reinforce it. Hence we think it sufficient for a defendant to show that he does not recall his statement with sufficient detail to satisfy his counsel that he can fairly go to trial without it. In such circumstances, the application should be granted unless the State shows that the grant would "improperly hamper the prosecution."

 In this case the defense made no showing under oath, and for the reason frankly stated by counsel that in view of *Tune* he could not see how any would suffice. The State understandably made no offer in opposition. On the record before us we cannot differ with the trial court's action, but in these circumstances we conclude that defendant should be permitted to renew his application in the light of the views expressed above.

 There remains the question whether there shall be a hearing with cross-examination as to the factual showing advanced by a defendant in support of his motion. From the nature of the issue, it would seem to be fruitless to embark upon one. If, for example, defendant asserts the confession was improperly procured, a full-fledged hearing on that claim would lead to the same piecemeal trial which this court declined to permit in *Cicenia* when the defendant moved to suppress a confession in advance of trial upon the claim that it was involuntary. If, apart from a claim of involuntariness, the defendant asserts his inability to recall the details and his counsel concludes he needs discovery for that reason, little would be gained by cross-examination of either affiant. The fact seems inescapable that to establish his case upon such inquiry, defendant would need the very

pretrial inspection which the State resists, and this would be so, not only to permit an intelligent measurement of the asserted basis of the application, but also because, in the final analysis, counsel for the defendant really cannot know whether he needs discovery until he has had it. Hence, upon defendant's *ex parte* proof to the foregoing effect, the pretrial hearing, in the ordinary situation, should shift to the State's claim of extraordinary circumstances in opposition to the motion and the appropriate action which should be taken in the light of the special facts. How the State's showing should be handled cannot be forecast; it must depend upon specific circumstances.

## II.

The motion to inspect statements made by prospective witnesses for the prosecution presents a different problem. Here the fears and considerations urged against disclosure of a defendant's own statement and irrelevant upon that issue, have force, which frankly we hesitate to evaluate for want of adequate experience and information.

It should with equal candor be conceded that a deficiency in our present handling of criminal matters is the lack of adequate facilities for factual investigation by defendants. Knowlton, *"Criminal Law and Procedure,"* 11 *Rutgers L. Rev.* 71, 72 (1956). Most criminal trials turn upon facts. The State is immediately upon the scene of the crime, equipped with a staff and the process of subpoena before the grand jury. Even pecunious defendants are rarely represented by investigators at that stage. And, of course, the indigent defendant receives assigned representation long after the trails have faded and usually without the aid of expert investigators.

In an effort to assure fairness, we have taken some steps. We have stressed the obligation of the State to be as vigilant in the vindication of the innocent as it must be in the prosecution of the guilty. We have stressed, *State v. D'Ippolito,* 19 *N. J.* 540, 549 (1955), Canon 5 of the *Canons*

*of Professional Ethics* (adopted by *R. R.* 1:25) which provides in part:

> "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible."

Recently we held that a defendant may at the time of trial call for production of prior statements of witnesses against him for use in cross-examination. *State v. Hunt,* 25 *N. J.* 514 (1958); see also *State v. Mucci,* 25 *N. J.* 423 (1957).

Defendant here asks that we go further, and authorize pretrial inspection of statements of prospective witnesses. We are not prepared to take that step without fuller experience with the practical operation of *Hunt* and more information with respect to experience in other jurisdictions in which pretrial disclosure exceeds what is now permitted here.

Our rule of court presently bars the relief here sought. *R. R.* 3:5–11 provides:

> "Upon motion of a defendant made at any time after the filing of the indictment or accusation, the court shall order the prosecutor to permit the defendant to inspect and copy or photograph designated books, tangible objects, papers or documents other than written statements or confessions made by the defendant obtained from or belonging to the defendant and may, if the interests of justice so require, order the prosecutor to permit the defendant to inspect and copy or photograph written statements or confessions made by the defendant and designated books, tangible objects, papers or documents obtained from others *except written statements or confessions."* (Emphasis added)

A rule should not ordinarily be revised or abandoned except by an exercise of the rule-making power. The nature of the problem is such that it should be explored at a judicial conference at such time as consideration may seem to be appropriate, to the end that so important a proposal may be considered upon full hearing rather than upon the naked record of an individual case which chances to come before us. We add that there was no showing here which would

144

invite relaxation of *R. R.* 3:5–11 under the provisions of *R. R.* 1:27*A.*

The trial court properly denied the motion in compliance with the rule.

The judgment is accordingly affirmed but without prejudice to prompt renewal of the application for pretrial inspection of defendant's own statement. No costs.

WACHENFELD, J. (concurring). The views, observations and reasons of the late Chief Justice Vanderbilt in *State v. Tune,* 13 *N. J.* 203 (1953), are just as cogent and applicable today as they were then, and I vote to affirm on the grounds there expressed.

Mr. Justice BURLING concurs in this opinion.

*For affirmance without prejudice*—Chief Justice WEINTRAUB, and Justices HEHER, JACOBS, FRANCIS and PROCTOR —5.

*For affirmance in toto*—Justices WACHENFELD and BURLING—2.