SHAW *v.* STATE OF INDIANA.

[No. 30,667. Filed November 2, 1965. Petition for rehearing withdrawn January 18, 1966.]

Lewis Davis, of Indianapolis, for appellant.

John J. Dillon, Attorney General, and James Manahan, Deputy Attorney General, for appellee.

ACHOR, J.—Appellant was charged in two counts with (1) second degree burglary, and (2) habitual criminal. He was convicted on both counts and sentenced to a term of two to five years on Count One, and to a life term on Count Two. He assigns as error the overruling of his motion for new trial. The grounds therein asserted are (1) that the verdict is not sustained by sufficient evidence, and (2) that the verdict was contrary to law.

In his argument the appellant presents three propositions which can be summarized as follows:

1. The joint trial of the burglary charge and the habitual criminal charge violated the appellant's constitutional rights.

2. The verdict as to the first count is not sustained by sufficient evidence because there is no satisfactory proof that the appellant took part in the burglary.

3. One of the two prior offenses proved in support of appellant's conviction on the second count for habitual criminal did not meet the requirements of the habitual criminal statute because the appellant was sentenced to the state farm, which is asserted to be a correctional institution for misdemeanors, and not a *penal* institution for felony or felonies as prescribed in the controlling statutes.

No reversible error is presented by appellant's *first* proposi-

tion for two reasons: (a) Under Rule 2-6[1] of this court, alleged errors of law asserted as grounds for new trial must be separately specified therein, in order that the trial court may have an opportunity to rule upon the specific question of law prior to the prosecution of an appeal. The issue here argued was not so presented.

(b) The joint trial of the burglary charge and the habitual criminal charge did not violate the appellant's constitutional rights. *Barr* v. *State* (1933), 205 Ind. 481, 167 N. E. 259, 72 F. 2d 334, 336. (Cases cited by the appellant as controverting the Barr case, *supra,* merely go to the sufficiency of the charge and of the evidence in support thereof.)

Appellant's *second* proposition is also without merit. A police officer positively identified the appellant as one of the burglars he saw inside Eddie's Service Station on July 10, 1962, in Indianapolis at the time of the burglary. Appellant and accomplice denied this fact. They testified that appellant was not a party to the crime but that during the entire transaction he was lying in the back seat of the car in an inebriated condition.

The most that can be said for appellant is that the evidence was conflicting. Conflicting evidence will not be weighed on appeal. *Metz* v. *State* (1963), 244 Ind. 536, 538, 194 N. E. 2d 617, 618; *Epps* v. *State* (1963), 244 Ind. 515, 531, 192 N. E. 2d 459; *Brown* v. *State* (1953), 232 Ind. 227, 111 N. E. 2d 808; *Moore* v. *State* (1953), 231 Ind. 690, 111 N. E. 2d 47; 9 I. L. E. Criminal Law § 734 n. 33.

We next consider appellant's *third* proposition. Appellant was charged with having been convicted and sentenced on four prior criminal offenses. Proof was made as to only two. Appellant contends that the evidence before the court as to

1. "In all cases in which a motion for new trial is the appropriate procedure preliminary to an appeal, such motion shall be filed and shall *separately specify* as grounds therefor each error relied upon however and whenever arising up to the time of filing of such motion, . . ." [Our emphasis.] Indiana Supreme Court Rule 2-6.

one of those two prior convictions is not sufficient to support a conviction under the habitual criminal act because one of the two prior charges for which he was convicted was for petit larceny, for which he, on June 22, 1959, was sentenced for a term of one year to imprisonment in the Indiana State Farm which, he asserts, is a "correctional institution" to which males are sentenced for the commission of misdemeanors. Thus, he asserts, the sentence for this offense does not bring him within the purview of the habitual criminal act since such said institution is not a "penal institution for felony" or a "penal institution for felonies," as provided by Burns' Ind. Stat. Anno. §§ 9-2207 and 9-2208 (1956 Repl.).[2]

Under the statutes of this state and the cases construing them, the law is well established that crimes for which the accused may be committed to the Indiana State Prison, the Women's State Prison (except the correctional department thereof), and the Indiana Reformatory are denominated as felonies and that all other offenses against the criminal law are denominated as misdemeanors. Acts 1905, ch. 169, § 1, p. 584, being Burns' Ind. Stat. Anno. § 9-101 (1956 Repl.) ; Acts 1897, ch. 53, § 8, p. 69, being Burns' Ind. Stat. Anno. § 13-407 (1956 Repl.) ; Acts 1915, ch. 22, § 1, p. 39, being Burns' Ind.

---

2. The pertinent sections of the habitual criminal act provide as follows:

"Every person who, after having been twice convicted, *sentenced* and *imprisoned in some penal institution for felony*, whether committed heretofore or hereafter and whether committed in this state or elsewhere within the limits of the United States of America, shall be convicted in any circuit or criminal court in this state for a felony hereafter committed, shall be deemed and taken to be an habitual criminal, and he or she shall be sentenced to imprisonment in the state prison for and during his or her life." Acts 1907, ch. 82, § 1, p. 109, being § 9-2207, Burns Ind. Stat. Anno. (1956 Repl.). [Our emphasis.]

"To authorize a sentence of imprisonment for life under this act, the indictment or affidavit shall allege that the defendant has been previously twice convicted, *sentenced and imprisoned in some penal institution, for felonies,* describing each separately. If the trial jury, in their verdict, find these facts to be true, and convict such defendant of the third felony, the trial court, after passing sentence of imprisonment for a specific term, as prescribed by the statute, shall proceed to sentence the defendant to imprisonment for his or her life." Acts 1907, ch. 82, p. 109, being Burns' Ind. Stat. Anno. § 9-2208 (1956 Repl.). [Our emphasis.]

Stat. Anno. § 13-409 (1956 Repl.). *Hunter* v. *State* (1965), 246 Ind. 494, 207 N. E. 2d 207; *Dowd, Warden* v. *Sullivan* (1940), 217 Ind. 196, 27 N. E. 2d 82. See also: 22 C. J. S. § 6, pp. 15, 16.

Thus, even though the crime of petit larceny which has been held to be a felony, since sentence therefor *may* be in the state reformatory for one to five years or in the county jail or the state farm for not exceeding one year, nevertheless, the fact that this appellant was sentenced to the state farm under the "misdemeanor" section of the act does not change the character of the state farm to that of a penal institution for felony or felonies.

A study of the act tends to support appellant's contention that, at least in its creation, the Indiana State Farm was intended to be a correctional institution, as contrasted with the Indiana State Prison and the Indiana Reformatory which had previously been established. Burns' Ind. Stat. Anno. § 13-501 (1956 Repl.) specifically describes the state farm as a "correctional institution" for the confinement of male violators formerly committed to the county jails or workhouses [Burns' Ind. Stat. Anno. § 13-507 (1956 Repl.].

Similarly, Burns' Ind. Stat. Anno. §§ 13-614, 615 and 616 (1956 Repl.) provide for a "correctional department" of the Indiana Women's Prison where females who were not subject to commitment to such prison but were formerly committed to the county jails and workhouses, could be committed.

Further, it is to be noted that Burns' Ind. Stat. Anno. § 13-511 (1956 Repl.) provides that the same good-time rule shall apply to the Indiana State Farm and the "correctional department" at the Indiana Women's Prison. This section of the statute applies to no other institutions. Thus, it can be argued with reason that the Indiana State Farm, established as a "correctional institution," and the "correctional department" of the Indiana Women's Prison are, by legislative intent, to be regarded as the same type of institutions, dis-

tinct from others, for the incarceration of criminals, recognizing, however, in a generic sense, that all such establishments (including county jails) may be described as penal institutions.

The state contends that although appellant was sentenced to the state farm, and even though we consider that institution as a correctional institution as distinguished from a penal institution, because of a "parole hold," he was actually imprisoned in the Indiana Reformatory which, admittedly, is a penal institution, and that by reason of this fact the requirements of the habitual criminal act have been met.[3] Thus the remaining question which we must determine is whether under the habitual criminal act it is necessary that a convict not only be twice previously imprisoned in a penal institution but that he also be sentenced (by a court) *to* such institution for such prior crimes.

Whether, under a strict and sophisticated consideration of §§ 9-2207 and 9-2208, *supra,* of the habitual criminal act, it is necessary that the accused be "sentenced [to] and imprisoned in some penal institution," provides an arguable subject of discussion. It can be argued on the one hand that the preposition "to" following the word "sentenced" is implied from the general context of the sentence. It can also be argued that since the preposition "to" is omitted, the conditions of the statute are complied with in event the convicted felon has "been previously twice convicted . . . and imprisoned in some penal institution," whether or not the decree or decrees by which he was imprisoned expressly so provided.

We do not believe that the legislature intended the rhetorical exactitude which the latter construction would require. For example, the same subject matter as stated in §§ 9-2207 and 2208, *supra,* is not identical in either phraseology or punctu-

3. Presumably, this transfer was made by the Department of Correction created under Acts 1953, ch. 266, § 1, et seq., p. 944, being Burns' Ind. Stat. Anno. § 13-1501, et seq. (1956 Repl.). However, the state has neither cited nor quoted from any statute which authorized such transfer. See Indiana Supreme Court Rule 2-17e.

ation. But more significantly, it is doubtful whether the legislature contemplated that a mere administrative change of incarceration, such as appears to be involved here, should be permitted to make the difference between a life sentence and just another sentence of one to five years for another felony for which appellant was found guilty under Count One of the indictment. Neither do we believe the legislature intended that a person might be sentenced to life imprisonment for those acts of petit larceny for which he shall have merely been previously twice sentenced to the state farm for determinate periods of 60 days to one year each.

Ambiguities in the criminal law, which is statutory, shall be construed most favorably to the accused. *Short* v. *State* (1954), 234 Ind. 17, 122 N. E. 2d 82; *Shutt* v. *State* (1954), 233 Ind. 120, 117 N. E. 2d 268; *Gingerich* v. *State* (1950), 228 Ind. 440, 93 N. E. 2d 180; *Caudill* v. *State* (1946), 224 Ind. 531, 69 N. E. 2d 549; 26 I. L. E. Statutes § 175, p. 366.

Also, in the case of *Metzger* v. *State* (1938), 214 Ind. 113, 118, 13 N. E. 2d 519, this court stated:

"A statute of this nature should be strictly construed. Its provisions should not be extended by construction, . . ."

Under such a construction of the habitual criminal act, *supra*, we conclude that the evidence is not sufficient to support a conviction under Count Two of the indictment.

Judgment is, therefore, reversed as to the habitual criminal charge (Count Two) and affirmed as to the burglary charge (Count One).

Myers, J., concurs. Jackson, C. J., concurs in the result. Arterburn, J., dissents as to the reversal of Count Two, with an opinion, in which Landis, J., concurs.

DISSENTING OPINION

ARTERBURN, J.—I find I must dissent to the reversal of the conviction of the appellant on the habitual criminal charge (Count Two).

The Habitual Criminal Act in part provides:

"To authorize a sentence of imprisonment for life under this act, the indictment or affidavit shall allege that the defendant has been previously twice convicted, sentenced and imprisoned in *some penal institution* for felonies, describing each separately. If the trial jury, in their verdict, find these facts to be true, and convict such defendant of the third felony, the trial court, after passing sentence of imprisonment for a specific term, as prescribed by the statute, shall proceed to sentence the defendant to imprisonment for his or her life." (Our italics) Acts 1907, Ch. 82, § 2, p. 109, being Burns' Ind. Stat. Anno. § 9-2208 (1956 Repl.)

In the case before us, one of the prior convictions of the appellant was for petit larceny, for which he was sentenced to the Indiana State Farm. It is conceded by the appellant (and the majority opinion so holds) that a conviction of petit larceny is a "felony," since under the statute any offense for which a person *may be* punished by death or imprisonment in the state prison is classified as a "felony." Acts 1905, ch. 169, § 1, p. 584, being Burns' Ind. Stat. Anno. § 9-101 (1956 Repl.)

The statute in force at the time of conviction provided that a person convicted of petit larceny may be imprisoned at the state farm. However, this does not change the character of the crime from that of a felony. *In re Sobieski* (1965), 246 Ind. 222, 204 N. E. 2d 353.

It seems to me, therefore, in conformity with the statute defining an habitual criminal, that this defendant was convicted of a felony when he was convicted of petit larceny, and that (as the statute provides) he was sentenced to a "penal" institution, which was the Indiana State Farm. The Indiana State Farm is a penal institution, as that term is used in

common language. Webster's Third New International Dictionary defines "penal" as "of or relating to punishment, penalty, . . ." That fits the Indiana State Farm as well as any other penal institution in the State. I feel that the majority opinion goes into a refinement of semantics over whether or not the State Farm is a "penal institution." The majority opinion tries to make a distinction between a penal institution and a correctional institution, when the terms are used interchangeably in all the statutes.

I further point out that the legislature has made no distinction between penal institutions and correctional institutions, as the majority opinion attempts to make. The 1953 Acts, ch. 266, p. 944 provide for the government and supervision of the *Indiana State Prison*, Indiana Reformatory, Indiana Women's Prison, Indiana Boys' School, Indiana Girls' School and the *Indiana State Farm*, alike, without any distinction as to names.

The title of the Act reads:

"AN ACT creating a Department of Correction and prescribing the powers and duties thereof; creating offices, boards and commissions; providing thereby for the management of *state correctional institutions* and for the custody and control of persons committed thereto; . . ." (Our italics)

Although Chapter 266 of the Acts of 1953 was repealed by the Acts of 1961, ch. 343 which, in short, provides for a Commissioner of the Department of Correction, the title to the 1961 Act likewise referred solely to "correctional institutions and the custody and control of persons committed thereto; . . ."

The majority opinion makes a needless distinction without reason.

The decision of the trial court should be affirmed. Landis, J., concurs.

NOTE.—Reported in 211 N. E. 2d 172.