NOEL *v.* STATE OF INDIANA.

[No. 30,765. Filed April 14, 1966. Rehearing denied June 6, 1966.]

*Thomas W. Munger*, of Lafayette, for appellant.

*John J. Dillon*, Attorney General, and *Douglas B. McFadden*, Deputy Attorney General, for appellee.

ARTERBURN, J.—The defendant-appellant was convicted of enticing a female into an immoral place. The evidence shows that the defendant, 43 years of age, owned a 1951 Chevrolet school bus with a cot or bed therein; that in August, 1964 the prosecuting witness, of the age of 17, was approached by the defendant to engage in prostitution in the bus; that he had arrangements with other girls for the same purpose and that one of them had become pregnant and that he was looking for a replacement.

The evidence further shows that he asked one of the girls for the name of some other girls and he, in his school bus with one of the girls, went to see the prosecuting witness and at the time offered her a job as a prostitute on his bus, giving her the details of her work and the price she was to charge. He asked her also if she knew of any other girls he could get to work for him.

The prosecuting witness at the time was on parole from the Girls School. We may draw from the evidence that she informed her parole officer of the solicitation and that she shortly thereafter informed the defendant that she would

work for him. A specific night was fixed for them to meet the defendant with his bus at Bald Knob for her to perform her work. When the girls met the defendant with his bus at that location, the police were there and arrested the defendant.

Errors complained of in the trial court are first, that the court erred in overruling the motion to quash. The memorandum thereto specified that the indictment was vague and indefinite because of the expression therein "to prostitute herself." We are not impressed with this contention, since common usage of the word "prostitute" involves sexual intercourse, although it may have a less immoral meaning in some rather uncommon usage. Merriam-Webster New International Dictionary (3rd ed. 1961) defines the verb prostitute as follows:

"1. to offer indiscriminately for sexual intercourse esp. for payment. . . .

"2. to devote to corrupt or unworthy purposes or ends. . . ."

The context in which the words in the indictment is used reveals clearly, and in our opinion, definitely its meaning. The indictment reads in part that the defendant did entice the prosecuting witness, a female person, "for vicious and immoral purposes, to-wit: for the purpose of having sexual intercourse with said girl and for the purpose of causing, aiding and encouraging said girl to prostitute herself, . . ." The affidavit clearly states in direct and unmistakable terms the nature and character of the charge against the defendant with certainty to a common intent. *Kraft* v. *State* (1930), 202 Ind. 44, 171 N. E. 1; *Smith* v. *State* (1927), 199 Ind. 217, 156 N. E. 513.

It is next complained that the court erred in excluding the juvenile court record of the prosecuting witness. We find no error in such ruling of the court, since Burns' Ind. Stat. Anno. § 9-3215 (1965 Supp.) provides that no child shall "be deemed a criminal by reason of such

adjudication, nor shall such adjudication be deemed a conviction, . . ." Burns' Ind. Stat. Anno. § 9-3114 (1956 Repl.) further provides that "Such records shall be open only by order of the court to persons having a legitimate interest. . . ."

The purpose of the statute is to protect juveniles against such proceedings brought for their benefit, and it may not be used for the purposes of impeachment. *Woodley* v. *State* (1949), 227 Ind. 407, 86 N. E. 2d 529.

Next, error is complained of in the giving of instruction number 9 by the court. This instruction reads as follows:

> "While it is necessary that every essential element of the crime charged against the accused should be proved by the evidence beyond a reasonable doubt, this does not mean that all the incidental or subsiduary [sic] facts should be proved beyond a reasonable doubt. Evidence is not to be considered in fragmentary parts, and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered. The weight of the testimony to be determined from the other evidence may be weak, if not *impossible,* but when viewed in connection with surrounding facts and circumstances, it may be so well supported as to remove all doubts as to its existence, as detailed by the witness. Acts when considered apart from all other evidence may appear innocent, but when considered with other evidence may import guilt." (Our italics)

The defendant's objection to this instruction was that the sentence beginning with the words ". . . The weight" and ending with the word "witness" is without meaning and confusing. It appears to us that what has happened through some typographical error is that the word "impossible" has been used instead of the word "improbable," but we do not feel that such a slight irregularity creates any confusion, to the prejudice of either of the parties in this cause. The trial judge in substance told the jury that they should not become engrossed with minor points, but should view the evidence as a whole. It is unrealistic to impose upon a court absolute perfection in the use of language or grammar. Instructing a jury is most difficult and complex,

without indulging in super-refinements which have no substantial effect upon the ordinary and common meaning to be drawn from the instruction. Words at the best are imperfect means of precise communication. Their meaning will vary with the time, the place or the environment under which they are uttered. We do not believe the average layman or juryman could have been misled by this instruction. The instruction as a whole is one which an ordinary person can understand. *Wilkoff* v. *State* (1933), 206 Ind. 142, 185 N. E. 642; *Males* v. *State* (1927), 199 Ind. 196, 156 N. E. 403.

The appellant further contends that the court committed error in this case in refusing to give his tendered instruction number 13. This instruction told the jury that if they found that the prosecuting witness was committed to the Indiana Girls School, even though she was on parole, the defendant could not be convicted under Burns' Ind. Stat. Anno. § 10-4210 (1956 Repl.), the act under which he was charged. The court did not err in refusing to give this instruction, since it was mandatory in form and for the reason that Burns' Ind. Stat. Anno. § 10-4210 (1956 Repl.) under which the criminal charge was brought, is broader in scope than Burns' Ind. Stat. Anno. § 10-4215 (1956 Repl.). The latter statute makes unlawful the solicitation of girls committed to the Indiana Girls School for prostitution in "a house or lodging place" and like structures. On the other hand, Burns' Ind. Stat. Anno. § 10-4210 (1956 Repl.) includes not only houses and like structures but also "any other place for vicious or immoral purposes; . . . ."

There is some contention made that the bus in this case was not "a house of prostitution." However, the memorandum to quash the affidavit does not specify or raise such point therein. The affidavit does specifically allege a "1951 Chevrolet bus" as the place. No alleged error was therefore saved on such contention for review on appeal.

It is finally urged that the court erred in refusing to order the state to produce an alleged written statement made by

the prosecuting witness, which was taken by a deputy sheriff. It is argued that this was necessary to properly cross-examine the prosecuting witness and show inconsistencies in her statement. The case of *Jencks* v. *United States* (1957), 353 U. S. 657, 77 S. Ct. 1007, 1 L. Ed. 2d 1103 is cited for authority on this point. It is argued that this is a constitutional right. In *Rosenberg* v. *United States* (1958), 358 U. S. 904, 79 S. Ct. 233, 3 L. Ed. 2d 227 the court limited argument to two questions, one of which was whether the *Jencks* case involed a rule of mere procedure or constitutional rights. In its opinion in that case no constitutional question is considered.

In *Palermo* v. *United States* (1959), 360 U. S. 343, 79 S. Ct. 1217, 3 L. Ed. 2d 1287, the theory that the *Jencks* case was grounded on a constitutional right was rejected. Justice Frankfurter, speaking for the court, stated at page 345:

> "Exercising our power, in the absence of statutory provision, to prescribe procedures for the administration of justice in the federal courts, this Court, on June 3, 1957, in *Jenck* v. *United States,* 353 U. S. 657, decided that the defense in a federal criminal prosecution was entitled, under certain circumstances, to obtain, for impeachment purposes, statement which had been made to government agents by government witnesses."

It therefore appears that the right to demand from the prosecution that a written statement of a witness be produced is a matter only of procedural law in the Federal courts and not one of a constitutional right.

Whether we in this state should adopt a procedural rule that would permit a party in a criminal case to secure the production of written statements made by a witness in the files of the opposing party is a question which has many doubtful aspects. It is, of course, true that we are searching for the truth in any criminal case. However, there are balancing factors which must be taken into consideration in the operation of such a rule. If the defendant is entitled to the production of papers in the files of the state, then it seems to us that there would be logic in the same rule applying to

any witness which the defendant may produce. This rule would not apply to a defendant himself unless he took the stand and waived his constitutional immunity against self-incrimination. In such event the state then would have the right to ask that his personal file be opened for the inspection of any letters or written statements made by the defendant in order to use such papers against him in cross-examination in bringing out the truth. At the same time the question would arise: Would the state, as well as the defendant, be entitled to know all the witnesses that each party expects to produce prior to trial? Along with this would arise the question of whether or not the grand jury investigation ought to be opened for inspection of the defendant as well as the state. These are all factors, among many more, which would have to be resolved in event any such rule were to be seriously considered as part of the criminal procedure in this state.

We are not unaware also in connection with this matter that complaint has been made in Federal court proceedings that the diligent, industrious lawyer who prepares his case ahead of time, can be compelled to open his files for the inspection and use of counsel on the other side who have not been diligent in investigation, in securing witnesses and testimony. With all these factors to be considered, this Court said in *Anderson* v. *State* (1959), 239 Ind. 372, 375, 156 N. E. 2d 384, 385:

> "We do not question the right of the United States Supreme Court to establish rules of practice and procedure for the federal courts. However, we are neither responsible for nor bound by such rules. We are only responsible for and bound by the rules of practice and procedure as established in the State of Indiana, and so long as they guarantee to every citizen his constitutional rights and no federal question is involved. . . .
>
> \* \* \* \* \* \* \*
>
> "The adoption of such a rule would constitute a serious departure from the rules of judicial procedure which have, for centuries, protected both the interests of society and the rights of the individual members who may have defied its law."

It is finally contended that the evidence is insufficient to sustain the verdict for the reason that it fails to show that the prosecuting witness was solicited or enticed, particularly on the night the police made the arrest of the appellant in his school bus at Bald Knob. With this contention we cannot agree because an original solicitation was made some time prior thereto when the appellant paid a visit to the prosecuting witness at her home and the original proposition was made to her. A rejection at the time does not erase the criminal intent of the appellant to solicit, encourage or entice a girl to a place of prostitution. On the night in question he requested the girls to get into the bus. In the respect above mentioned, the case of *LaMar* v. *State* (1953), 231 Ind. 508, 109 N. E. 2d 614 is not in point, because in that case the girl herself made the solicitation for work as a prostitute. Neither is there any basis for the contention that the appellant was entrapped in this case, since the initial idea as to his activity in using a bus as a place of prostitution originated with him and the evidence shows he had been engaged in such activity sometime prior thereto.

"The criminal intent originated in appellant's own mind and his conduct in execution thereof was not inspired or induced by the boy or the police." *Ditton* v. *State* (1943), 222 Ind. 25, 26, 51 N. E. 2d 356.

We find no error presented and the judgment of the trial court is affirmed.

Myers, C. J. and Rakestraw, J., concur. Jackson, J., concurs in result only. Achor, J., not participating.

NOTE.—Reported in 215 N. E. 2d 539.