BERNARD *v.* STATE OF INDIANA.

[No. 30,821. Filed October 31, 1967.]

*Robert G. Mann* and *Bolden & Mann*, both of Indianapolis, for appellant.

*John J. Dillon*, Attorney General, and *John J. Davis*, Deputy Attorney General, for appellee.

HUNTER, C. J.—The appellant herein is appealing from a conviction in the criminal court of Marion County, Indiana, of assault and battery with intent to murder and being an habitual criminal in two (2) counts, and of the commission of a felony, grand larceny, while armed.

Prosecution was commenced on the basis of two (2) indictments charging the appellant with the above stated crimes, appellant entered a plea of not guilty and thereafter trial was had by jury. The trial resulted in the jury finding appellant guilty on both indictments.

The error assigned and relied upon by the appellant is the overruling of his motion for a new trial.

The record of evidence, viewed most favorable to the appellee State of Indiana along with all reasonable inferences to be drawn therefrom, reveals the following:

On January 27, 1964 at 12:30 A.M., Indianapolis, Indiana, Norman Boyce seeing two (2) places that had been broken into, one of which was the Lane Radio & T.V. Service, went into a nearby phone booth where, as he called the police department, he was shot three (3) times from behind. After being shot, Boyce saw the appellant enter the phone booth and hang up the phone, and observed a revolver in appellant's hand.

One witness testified she was in her residence near the Lane Radio & T.V. Shop and saw Boyce in the phone booth. She heard shots, saw Boyce fall in the booth and saw a man go to the T.V. Shop and return with two (2) television sets. She could not identify the appellant as being the man but testified that he wore light pants and a plaid jacket and was a colored person. Another witness, who also lived near the vicinity of the crime, heard glass breaking and saw a man come from the direction of the Lane Radio and T.V. carrying some television sets. She saw this man stop behind a Dairy Queen and then heard four (4) shots. The owner of Lane's Radio and T.V. found a window glass broken and four (4) television sets missing.

Although appellant alleges a number of complaints, the first issue to be considered is whether appellant can obtain a list of the prosecution witnesses prior to trial.

The grand jury returned two (2) indictments on which were endorsed a total of five (5) witnesses, two (2) of which were duplicated on both indictments. Prior to trial the appelland filed a motion for a list of the witnesses to be used against him. The motion was overruled by the court, and later a total of sixteen (16) persons were called as witnesses for the prosecution. As each witness, whose name was not endorsed on the indictments, was produced to testify appellant objected to their testimony on the basis of surprise and moved for a continuance to investigate. The several motions were overruled by the court.

Discovery may be provided for by statute, court rule or granted by the inherent power of the trial court. We find no rule of court on point, nor have we found any criminal code provision clearly applicable, although it is provided that

"In all criminal cases where no special provision has been made in this act, the rules of pleading and practice in civil actions shall govern, so far as applicable." Ind. Ann. Stat. § 9-2407 (1956).

*Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. 2d 787. We do not believe the rules of civil practice should be applicable to a request for a list of witnesses in a criminal cause. For a general analysis see Orfield, *Criminal Discovery in Indiana,* 1 Ind. L. Forum 117 (1967).

While discovery in favor of the accused is not required by the constitutional guarantee of due process, *Cicenia* v. *Lagay,* 357 U.S. 504 (1958), it has been recognized that within the general nature of a trial court is the inherent power to order various types of discovery: discovery of the defendant's confession, *State* v. *Johnson* (1958), 28 N.J. 133, 145 A. 2d 313; prior statements of a prosecuting witness which are inconsistent with his later testimony, *People* v. *Riser* (1956), 47 Cal. 2d 566, 305 P. 2d 1. It is the duty of the trial judge to regulate the conduct of those participating and to guide the proceeding to insure fairness and obtain economy of time and effort as is commensurate with the rights of both society and the criminal defendant.

We are confronted with pre-trial discovery of witnesses, and we acknowledge that the trial court has the power to order the prosecutor to disclose a list of his witnesses. *Norton* v. *Superior Court* (1959), 173 Cal. App. 133, 343 P. 2d 139. This power must be discretionary since the trial judge is often faced with two possible lines of action. However, we believe the best modern authority holds this power not to be a full discretion but rather a limited discretion. Chief Justice Weintraub of the New Jersey Supreme Court circumscribed

the discretionary power to order inspection of an accused's confession reasoning that:

> "In some areas an exercise of discretion must necessarily remain an intuitive response to a set of facts. Here, however, some guiding criteria can be prescribed and hence should be, to guard against arbitrariness and unequal treatment . . ." *State* v. *Johnson, supra,* at 136, 145 A. 2d 316.

The Michigan Supreme Court, in the absence of statute or rule, declared that modern authority allows discovery within the inherent power of the trial court. The court stated that the defendant must show that such is necessary to preparation of his case, and on such a showing discovery

> "should be granted absent a more compelling showing by the people of facts tending to prove that such an order would unfairly hamper the prosecution or do a disservice to the public interest." *People* v. *Johnson* (1959), 356 Mich. 619, 628, 97 N.W. 2d 739, 744.

An identical limitation on the trial judge's discretion has developed in California in the absence of statute or rule. *Powell* v. *Superior Court* (1957), 48 Cal. 2d 704, 312 P. 2d 698; *People* v. *Riser, supra.* Judge Traynor states that California courts hold "in the absence of a countervaling showing by the prosecution that the information may be used for an improper purpose, discovery is available" as a matter of right. Traynor, *Criminal Discovery,* 39 N.Y.U. Law Rev. 228, 244 (1964).

We agree that the trial judge has limited discretion and that when a list of witnesses is requested it should be granted unless the State makes a showing of a paramount interest over that of the defendant.

It is self-evident that a list of witnesses would have been beneficial in the preparation of appellant's case. We do not require that the State lay bare its case in advance of trial nor that the criminal defendant be allowed a fishing expedition, however these objections do not arise

when a list of witnesses is requested and the State fails to show a paramount interest in non-disclosure. It is apparent that providing a list of the prosecution's witnesses prior to trial is in conformity with the intent and purpose of Ind. Ann. Stat. § 9-903 (1956) which requires the names of all material witnesses to be endorsed upon the indictment thus permitting pre-trial disclosures to the defendant.

For the above reasons a list of the prosecution's witnesses should have been granted to the appellant and we hold the judgment of the trial court should be reversed.

While we are reversing, other contentions of the appellant should be laid to rest for the subsequent trial.

Appellant maintains that although he has been twice convicted for two (2) prior felonies and on each conviction, sentenced to the Indiana State Farm, he cannot be deemed an habitual criminal upon conviction for a third felony since the Indiana State Farm is not a penal institution within the purview of the habitual criminal statute. The appellee maintains that the State Farm is a penal institution as contemplated by the habitual criminal statute, and any distinction between the State Farm and the State Prison or Reformatory is contrary to the common meaning of the language of the statute.

The statute under which appellant was prosecuted for being an habitual criminal is as follows:

"Every person who, after having been twice convicted, sentenced and imprisoned in some penal institution for felony, whether committed heretofore or hereafter, and whether committed in this state or elsewhere within the limits of the United States of America, shall be convicted in any circuit or criminal court in this state for a felony hereafter committed, shall be deemed and taken to be an habitual criminal, and he or she shall be sentenced to imprisonment in the state prison for and during his or her life." Ind. Ann. Stat. § 9-2207 (1956).

To authorize a life sentence on conviction for a third felony, Ind. Ann. Stat. § 9-2208 (1956) requires proof that the accused was twice convicted for felonies, sentenced and imprisoned in a penal institution for those felonies. The purpose of the statute is to more severely penalize those persons that prior sanctions have failed to deter from committing felonies. *Kelley* v. *State* (1932), 204 Ind. 612, 185 N.E. 453. The punishment is harsh because the offender is an habitual criminal. Ind. Ann. Stat. § 9-101 (1956) reads:

> "All crimes and public offenses which may be punished with death or imprisonment in the state prison shall be denominated felonies; all (and) all other offenses against the criminal law shall be denominated misdemeanors."

This statute does not require that imprisonment must be in the State Prison for the offense to be a felony, but it is sufficient if the offender may be imprisoned in the State Prison. *Paneitz* v. *State* (1965), 246 Ind. 418, 204 N. E. 2d 350; *In re Sobieski* (1965), 246 Ind. 222, 204 N. E. 2d 353.

Under the imprisonment of a minor statute, Ind. Ann. Stat. § 9-1815 (1956) and under many of our statutes defining particular crimes, the trial judge is given discretion in imposing sentence thus fixing the place of imprisonment. The legislature has apparently thought it desirable to provide an area of latitude in sentencing. *Lee* v. *State* (1958), 239 Ind. 232, 156 N.E. 2d 78. Yet, whether commitment is to the State Prison or the State Farm the character of the offense is not changed. It is for the legislature to determine which offenses are felonies and which are misdemeanors, but it is the power to fix the place of imprisonment which is delegated to the trial judge in particular cases.

If the statute defining the offense provides for possible imprisonment in the State Prison but for reasons of leniency or mercy, the trial court by statutory authority sends the offender to the State Farm, the crime is nonetheless a felony.

Appellant concedes that the prior convictions for vehicle taking and robbery are felonies, but his main contention is that the place of imprisonment, the Indiana State Farm, is not a penal institution. In support of this proposition, appellant has cited *Shaw* v. *State* (1965), 247 Ind. 139, 211 N. E. 2d 172. The facts of that case were that the defendant while on parole from the Indiana State Reformatory was convicted of a further felony and sentenced to the Indiana State Farm. But because of his parole status, he was permitted to serve his Farm sentence concurrently with the time remaining on his parole at the Indiana Reformatory. It was also established that the defendant had been convicted for one other prior felony. The court held that imprisonment in the Indiana State Farm is not sufficient to support a conviction under the habitual criminal act, Ind. Ann. Stat. §§ 9-2207 and 9-2208 (1956), since the State Farm is not a penal institution but rather a correctional institution.

We believe it is necessary for this Court to reevaluate the position stated in the majority opinion of *Shaw*. Judge Arterburn pointed out, in his dissenting opinion in *Shaw*, that the majority "makes a needless distinction" between a penal and a correctional institution and observed:

"It seems to me, therefore, in conformity with the statute defining an habitual criminal, that this defendant was convicted of a felony when he was convicted of petit larceny, and that (as the statute provides) he was sentenced to a 'penal' institution, which was the Indiana State Farm. The Indiana State Farm is a penal institution, as that term is used in common language. Webster's Third New International Dictionary defines 'penal' as 'of or relating to punishment, penalty, . . .' That fits the Indiana State Farm as well as any other penal institution in the State. I feel that the majority opinion goes into a refinement of semantics over whether or not the State Farm is a 'penal institution.' The majority opinion tries to make a distinction between a penal institution and a correctional institution, when the terms are used interchangeably in all the statutes."

A penal institution includes every place of confinement for convicted criminals. True, the State Farm was intended to be a correctional institution; however, for purposes of the habitual criminal act it is a penal institution. Habituality is a state of being, rather than a separate crime, *Smith* v. *State* (1957), 237 Ind. 532, 146 N. E. 2d 86, and the place of prior confinement has no bearing on this habituality. Judge Arterburn was correct when he pointed out that no distinction between correctional and penal need be made, for in essence all such state institutions are correctional. Art. I, § 18 of the Indiana Constitution states:

> "The penal code shall be founded on the principles of reformation, and not of vindictive justice."

Therefore, insofar as *Shaw* conflicts with this opinion, it is overruled.

For the foregoing reasons this cause is remanded with instructions to sustain appellant's motion for a new trial.

Lewis, J., concurs.

Jackson and Mote, JJ., concur in result.

Arterburn, J., concurs in part and dissents in part with opinion.

### DISSENTING OPINION

ARTERBURN, J.—I must dissent from one aspect of the majority opinion in this case, namely, that which holds that the trial court committed error in not ordering the State to furnish a list of all witnesses prior to defendant's trial. I believe this changes the law in Indiana.

We are concerned here with the commission of a particularly vicious crime. A cab driver, Norman Boyce, who discovered the burglary, was shot three times in his back while telephoning the police. The identity of the defendant is conclusive, and the evidence that he committed the act is undisputed. He

was charged by the state and convicted by a jury of assault and battery with intent to murder and with being an habitual criminal. The evidence shows conclusively that this felon (I say this advisedly) had previously been convicted in 1959 and in 1960 of vehicle taking. It is stated as a basis for the majority opinion that witnesses whose names were not endorsed on the indictment were used at the trial, and therefore the appellant did not receive a fair trial. I point out first, that most of these witnesses were officers who were used to identify the defendant as being the felon who was in court and previously in prison for the two prior felonies under the charge of being an habitual criminal. It is difficult for me to understand how this defendant was surprised by such testimony and therefore did not receive a fair trial.

The defendant made a very simple motion in the trial court to be given a list of all the state's witnesses. The motion did not allege any grounds therefor, such as surprise; nor the necessity of any continuance because the defendant was totally uninformed as to the evidence which the state expected to present. The defendant's only argument on this point is based on the theory that he should have had a continuance to adequately prepare for trial, yet he did not ask for a continuance nor allege or show wherein he was surprised by any evidence.

The majority opinion holds that "it is self-evident" that the defendant was entitled to have such a list of witnesses, although it cites no cases from the State of Indiana. The opinion goes to such states as California and Michigan for support, but only to the extent that the granting of such a motion is *discretionary* with the trial court. Yet the majority opinion does not grant any discretion to the trial court, even if such were the law in Indiana. There is no showing of any factual basis for holding that the trial court abused or lacked discretion in denying this motion.

The resulting effect of the majority opinion is that in all cases where such a motion is refused, the trial court has

committed error, without any showing of any facts under which the trial court abused its discretion.

As previously stated, this majority opinion goes to foreign states for law which holds that in this state such a petition must be granted to the defendant. It states: "It is apparent that providing a list of prosecuting witnesses prior to trial is in conformity with the intent and purpose" of the statute in Indiana. (Citing Burns' Ind. Stat. Anno. § 9-903) It is interesting to note that the statute is not set out in the majority opinion, nor are any cases referred to which have interpreted this statute. Even the appellant, in his brief, admits that the only effect of this statute "is to prevent the state from obtaining a continuance on account of witnesses not endorsed" on the indictment or affidavit. *Denton* v. *State* (1965), 246 Ind. 155, 203 N. E. 2d 539; *Stevens* v. *State* (1959), 240 Ind. 19, 158 N. E. 2d 174; *Sieberry* v. *State* (1892), 133 Ind. 677, 33 N. E. 681.

The statute which the majority opinion says requires the State to furnish a list to the defendant on request reads as follows:

> "Names of witnesses.—When an indictment is presented by the grand jury, the names of all the material witnesses must be indorsed upon the indictment; but other witnesses may afterwards be subpoenaed by the state; but unless the names of such witnesses be indorsed on the indictment at the time it is presented, no continuance shall be granted to the state on account of the absence of any witness whose name is not thus indorsed." Acts 1905, ch. 169, § 112, p. 584, being Burns' Ind. Stat. Anno. § 9-903.

A similar and relevant statute also provides:

> "*Prosecutor's approval—Witnesses—Continuance.*—When any such affidavit has been made, as provided in the last section, the prosecuting attorney shall approve the same by indorsement, using the words 'approved by me' and sign the same as such prosecuting attorney and indorse thereon the names of all the material witnesses; after which such affidavit shall be filed with the clerk, who shall indorse thereon

the date of such filing, and record the same as in the case of an indictment, as provided in section one hundred and thirteen [§ 9-904] of this act. Other witnesses may afterwards be subpoenaed by the state; but unless the names of such witnesses be indorsed on the affidavit at the time it is filed, no continuance shall be granted to the state on account of the absence of any witness whose name is not thus indorsed. And the record of such affidavit and indorsements thereon, or a copy thereof certified to be a true copy by the clerk of the court, shall be sufficient evidence of the making and filing of such affidavit and the contents thereof; and the defendant may be tried upon such copy, all as provided in section one hundred and fifteen [§ 9-905] of this act in case of trial on copy of indictment." Acts 1905, ch. 169, § 119, p. 584, being Burns' Ind. Stat. Anno. § 9-909.

We find nothing in the statutes that says that on petition of the defendant the state is required to furnish a list of all witnesses and that it is reversible error for the trial court to refuse such request.

This Court has considered a similar question, namely, whether or not upon request of a defendant in a criminal case, the state must open up to the defendant all its files, including statements which it has taken from witnesses. In the consideration of such matters it has been stated that we are searching for the truth and for justice. This is the prime objective of a criminal proceeding. However, in order to get to the truth in a case and to have a fair trial, it is necessary to have the truth from both sides. We have stated that if one side must open up its files and disclose all of its evidence, the other side should do so also in the interest of full disclosure and justice. *Noel* v. *State* (1966), 247 Ind. 426, 215 N. E. 2d 539; *Anderson* v. *State* (1959), 239 Ind. 372, 156 N. E. 2d 384.

Of course, I realize a defendant rarely would want to be placed upon such a basis of equality. Likewise it seems to me that if it is fair for the defendant to have a list of all the witnesses the state expects to present at a trial, then in the search for the truth and justice, the defendant should also

tender a list of all witnesses he expects to use at the trial. This new rule will really prevent getting to the truth if the state is prevented from using all its material witnesses.

It is admitted in the majority opinion that there is no constitutional provision which requires either party in a criminal case to present a list of its witnesses. In holding the state must reveal its evidence and its witnesses and the defendant may refuse where there is no constitutional provision requiring such one-sided attitude, we are placing merely one more roadblock and technicality in the way of justice and in the way of the objective of punishing the quilty and freeing the innocent.

In this case the evidence shows, without contradiction, that this defendant is guilty of a horrible crime, yet it seems to me this Court is creating a new technicality and changing the law which has existed in Indiana for more than half a century, and thus reversing his conviction.

A new rule such as promulgated in the majority opinion will merely open up numerous new technical questions in criminal cases. Query situations where a prosecutor discovers a witness during the trial who has not been listed, or needs a witness to rebut a fact arising in the trial, or has newly discovered evidence, or knows of a witness prior to trial but does not think he needs such witness and thereafter decides he does? Whatever action or ruling the trial court takes in such situations will be a question for appeal and additional technicalities. Upon the failure to use a witness listed, it will be argued there is a presumption against the state and that the evidence would be against the state. On the other hand, the use of a witness not listed if the court grants it, will be argued, was a surprise.

It seems to me the law has been working fairly well in Indiana, and it is unnecessary for us to walk with our eyes open into a new thicket of technicalities for the trial courts to deal with.

The trial court acted properly under the law at the time it ruled in this case. If the Supreme Court desired to change trial procedure, it could have done so more justly by promulgating a new rule of trial procedure by requiring a list of witnesses be submitted by both sides, to be effective on a fixed date. That would have been a more orderly method; then trial courts would not be taken by surprise, old convictions not be upset and this felon's conviction not be reversed on a technicality and the case sent back for retrial at great expense and time.

It is my view that it is not our function as a Court to add to or change a statute which has acquired definite and fixed meaning through the years which would result in retroactive application. We should not be what are commonly called "Activists"—judges imbued with the idea of changing the laws or the constitution.

I feel the judgment of conviction should be affirmed.

NOTE.—Reported in 230 N. E. 2d 536.