Edward D. RODGERS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 980S362.

Supreme Court of Indiana.

July 9, 1981.

Theodore D. Wilson, Wilson, Coleman & Roberts, Indianapolis, for appellant (defendant below).

Theodore L. Sendak, Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

HUNTER, Justice.

The defendant, Edward D. Rodgers, was convicted by a jury of robbery, a class C felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.) and found to be an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.). He was sentenced to consecutive terms of five and thirty years. Rodgers presents the following issues for our review:

1. Whether the evidence is sufficient to sustain his conviction for robbery;

2. Whether the trial court committed reversible error in excluding prior inconsistent statements of witnesses; and

3. Whether the trial court erred in overruling defendant's motion to dismiss the habitual criminal charge.

The record indicates that on October 15, 1977, a man approached Helen Whitaker outside a Marsh supermarket located at the intersection of New York and State streets in Indianapolis, twisted her arm, grabbed her purse, and fled. Both the prosecuting witness and a bystander who witnessed the purse snatching made in-court identifications of the defendant as the man who took Whitaker's purse.

## I.

Defendant's contention that the evidence was insufficient to sustain his conviction for robbery is based on his challenges to the verity of both in-court identifications made of him. In both instances, defendant maintains that the identifications made at trial amount to mere conjecture.

Defendant first points out that Indianapolis Police Sergeant Jack Lyday testified that prior to trial, Whitaker, the prosecuting witness, told him she could not identify the person who took her purse. At trial, however, Whitaker testified that she did get a look at the man as he robbed her and, without equivocation, identified Edward Rodgers as that man.

Similarly, defendant emphasizes that immediately following the robbery, the bystander, ten year old[1] Kelly Welborn, told police that the man who robbed Whitaker was named Kevin Lewis. Welborn's identification of the perpetrator by name was based on her recognition of him as a customer on her paper route. At trial, however, Welborn identified the defendant, who was Lewis's brother and resided at the same address, as the man who took the purse. As the following testimony indicates, Welborn's in-court identification of the defendant was unequivocal despite her continuing confusion over the perpetrator's name:

Q. "Now, when you told the Police the name was Kevin Lewis, it turned out that you had the wrong name, do you agree with that?"

A. "No."

Q. "Do you have the right person, though, is this the right person?"

A. "Yes."

Q. "Regardless of what his name is?"

A. "Yes."

Based on these conflicts surrounding the testimony of the witnesses, defendant argues that the jury's verdict was a product of "conjecture, speculation, or unreasonable inferences of guilt" and should be overturned.

Defendant's contention strikes directly at the credibility of the witnesses, a matter which with rare exceptions is solely the province of the jury. *Rosell v. State*, (1976) 265 Ind. 173, 352 N.E.2d 750; *Lottie v. State*, (1974) 262 Ind. 124, 311 N.E.2d 800. Only when this Court has confronted "inherently improbable" testimony, *Penn v. State*, (1957) 237 Ind. 374, 146 N.E.2d 240, or coerced, equivocal, wholly uncorroborated testimony of "incredible dubiosity," *Gaddis v. State*, (1969) 253 Ind. 73, 251 N.E.2d 658, have we impinged on a jury's responsibility to judge the credibility of witnesses.

We will not intrude on the jury's province here. Both witnesses' identifications of the defendant at trial were unequivocal. While Whitaker's identification contradicted her earlier statement that she could not identify the perpetrator, which testimony to believe was a question for the jury. *Wollam v. State*, (1978) 269 Ind. 286, 380 N.E.2d 82; *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218. The confusion exhibited by Welborn related only to the name of the defendant, not to the physical characteristics by which she identified him. Furthermore, the identifications were buttressed by the testimony of Sergeant Lyday, who stated that the defendant's mother had told him that the defendant had committed the robbery. This evidence is sufficient to sustain the jury's conclusion that the defendant was the person who took Whitaker's purse through the use of force. *Robinson v. State, supra; Rosell v. State, supra.*

## II.

Defendant maintains that the trial court committed reversible error when it refused to permit him to introduce prior inconsistent statements of Whitaker and Welborn for impeachment purposes. In his brief, however, defendant concedes that the record does not reveal a tender or attempt to tender any prior inconsistent statement made by Whitaker. Since no tender or ruling of exclusion was made, no issue ex-

---

1. At the time she testified at trial, Welborn was twelve years old.

ists for this Court to address insofar as any prior inconsistent statement of Whitaker is concerned.

Defendant did tender a prior inconsistent statement made by witness Welborn. On direct examination, Welborn testified that she recalled the events of October 15, 1977. On cross-examination, counsel for defendant questioned Welborn about her testimony at a bind-over hearing, wherein she stated that the robbery had taken place on October 14, 1977. The following colloquy occurred:

Q. "Now, the last time that you were in Court, Kelly, do you remember that you testified that everything, everything that happened, happened on the 14th of October, and, not the 15th of October?"

*Court*: "If you recall."

A. (No answer given.)

*Court*: "If you recall, if you remember, it's one thing, if you don't it's another, so, you can just answer to the best of your recollection, and, then you can go on to the next question."

CROSS–EXAMINATION RESUMES; QUESTIONS BY MR. HUGHES.

Q. "Kelly, if you don't remember, it's okay."

A. "I don't remember."

Q. "Okay, so, you don't know whether it was the 14th or the 15th of October?"

A. "No."

Defendant later sought to introduce a certified transcript of Welborn's testimony at the bind-over hearing. The trial court sustained the state's objection to the tendered transcript.

█ In so ruling, the trial court erred. The foundation for the admission of a prior inconsistent statement had been properly laid. Ind.Code § 34–1–15–1 (Burns 1973); *Gradison v. State*, (1973) 260 Ind. 688, 300 N.E.2d 67. Defendant should have been permitted to introduce the certified transcript of witness Welborn's testimony at the bind-over hearing.

Nevertheless, the trial court's error does not warrant reversal of the judgment be-

low; the erroneous exclusion does not appear to have had any detrimental effect on a fair trial of the merits. Ind.R.Ap.P. 15(E); *Kolb v. State*, (1972) 258 Ind. 469, 282 N.E.2d 541. That conclusion stems first and foremost from the fact that witness Welborn admitted during subsequent cross-examination that, notwithstanding her testimony during direct examination that the incident occurred on October 15, she did not know in fact whether it took place on October 14 or 15. For all practical purposes, her admission effectuated the impeachment sought. And that impeachment involved a subject which, while not collateral in nature, neither bore directly on an element of the offense or a matter at issue in the cause. *See Bryant v. State*, (1973) 261 Ind. 172, 301 N.E.2d 179 (definition of collateral matter); Ind.Code § 35–42–5–1, *supra* (statutory elements of robbery). In addition, witness Welborn's testimony on the ultimate issues of fact was buttressed by the testimony of two other witnesses, as heretofore summarized. The trial court's error did not prejudice the substantial rights of defendant and does not warrant a new trial. Ind.R.Ap.P. 15(E); *Bean v. State*, (1978) 267 Ind. 528, 371 N.E.2d 713.

### III.

Defendant's final contention is that the trial court erred when it refused to grant his motion to dismiss the habitual criminal charge. He predicates his argument on three bases:

Defendant first maintains that the state failed to establish that he had accumulated two prior felony convictions, as is required to support an habitual criminal charge. Ind.Code § 35–50–2–8, *supra*. Specifically, he asserts that the certified information and commitment papers filed by the state to prove a 1976 conviction do not prove beyond a reasonable doubt that he was found guilty of a felony.

█ The caption of the charging instrument filed in 1976 reads in relevant part: "COUNT I—O.A.P.A. [Offenses Against Property Act] (VEHICLE) IC 35–17–17–5–

3a." As defendant correctly points out, no crime was codified at "I.C. 35–17–17–5–3a" under the criminal code in effect at that time. Nonetheless, the text of the charging instrument, wherein it was alleged that defendant "committed the crime of theft in that he knowingly, unlawfully, and feloniously exerted unauthorized control over a certain motor vehicle of TOM WOOD PONTIAC, INC." clearly established that the crime charged was theft of a motor vehicle. As the state concedes, the text simply reveals the scrivener's erroneous interposition of an extra "17" into the codification of theft of a motor vehicle, as it then existed. Ind.Code § 35–17–5–3(1)(a) (Burns 1975) (repealed effective October 1, 1977, by Acts 1976, P.L. 148, § 24).

Under the code then in effect, theft of a motor vehicle was punishable by imprisonment for a period not less than one year. Ind.Code § 35–17–5–12(5)(d) (Burns 1975) (repealed effective October 1, 1977, by Acts 1976, P.L. 148, § 24). Notwithstanding the clerical error, it cannot be doubted that the offense charged was a "felony."

■ Defendant maintains that it was not proven he was convicted of a felony, however, for he was only sentenced to a period of six months at the Indiana State Farm.[2] The commitment papers belie his argument. Therein, it was expressly stated that he was found guilty of "COUNT I—O.A.P.A. (VEHICLE)" and that he was "SENTENCED UNDER MINOR STATUTE." Chapter 3 of the criminal code then in effect, entitled "Sentencing of Minor," invested trial courts with discretionary power to sentence persons under "the full age of twenty-one years" to less than one year at the State Farm for a felony conviction. Ind.Code § 35–8–3–1 (Burns 1975) (repealed effective October 1, 1977, by Acts 1976, P.L. 148, § 24). At the time he was sentenced, defendant was twenty-one years old.

The evidence points unerringly to the conclusion that defendant was convicted of a felony in 1976. The trial court did not err in denying defendant's motion to dismiss on this basis.

■ Defendant also maintains that the motion to dismiss should have been granted for the reason that the habitual offender statute violates due process and equal protection guarantees. He cites no authority for either constitutional claim; he presents no argument even distantly related to equal protection guarantees. The arguments are waived. Ind.R.Ap.P. 8.3(A)(7).

■ We note that defendant's contention that the habitual offender statute in effect provides punishment for acts already committed was rejected by this Court in *Norris v. State*, (1979) Ind., 394 N.E.2d 144. We also note that defendant decries the immediacy of the bifurcated habitual offender sentencing hearing, contending that it deprived him the opportunity to appeal the underlying or third felony conviction prior to his sentencing as an habitual offender. The procedure does not offend due process; if an appeal of the underlying felony is successful, the habitual offender determination and sentencing must also be reversed. Without the former, the latter cannot stand. Ind.Code § 35–50–2–8, *supra*.

■ Finally, defendant appeals to the "conscience" of this Court to reverse the trial court's refusal to grant his motion to dismiss the habitual criminal charge. He cites the nonviolent nature of his auto theft, characterizes the instant crime as a mere "purse-snatching," and points to the fact that he was only seventeen and twenty years old at the times his prior felonies were committed. In the face of these circumstances, he asserts that the state's decision to amend the information to add the habitual criminal charge was "unreasonable, inequitable and contrary to the precepts of justice."

---

2. He relies on *Paneitz v. State*, (1965) 246 Ind. 418, 204 N.E.2d 350, for the proposition that for habitual offender purposes, the prior convictions must have resulted in imprisonment in the state prison. That rule was abolished in

*Bernard v. State*, (1967) 248 Ind. 688, 230 N.E.2d 536, overruling *Shaw v. State*, (1965) 247 Ind. 139, 211 N.E.2d 172. For present law, see Ind.Code § 35–50–2–8 (Burns 1979 Repl.).

Just as this Court does not sit as a super-legislature to second-guess the criteria established by the General Assembly for the imposition of habitual offender penalties, neither is it our prerogative to interfere with the discretionary power of the state to invoke those penalties. Ind.Code § 35–50–2–8, *supra; Comstock v. State*, (1980) Ind., 406 N.E.2d 1164; *Norris v. State, supra; Rummel v. Estelle*, (1980) 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382.

For all the foregoing reasons, the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.