**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL S. PARKER | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 91A02-1210-CR-830 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WHITE SUPERIOR COURT
The Honorable Robert B. Mrzlack, Judge
Cause No. 91D01-1203-FB-43

**August 13, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Michael Parker appeals his conviction and sentence for Class B felony manufacturing methamphetamine. We affirm.

**Issues**

The issues before the court are:

    I.    whether there was sufficient evidence that Parker was manufacturing methamphetamine; and

    II.    whether Parker's sentence is inappropriate.

**Facts**

On March 26, 2012, Parker, Joshua Isom, Tanisha Randall, Terry Smothers, Summer Engles, Robby Brown, and Brown's girlfriend were with Christopher and Veronica Cunningham at their trailer in Monticello. Veronica and Christopher lived there with their three children and allowed friends to periodically stay or congregate at their trailer. Parker, who was dating Randall at the time, was going to show Isom how to "wet cook" methamphetamine. Tr. pp. 161, 183. Parker brought the methamphetamine lab and some ingredients, including pseudoephedrine pills, drain cleaner, and Coleman fuel. The others also contributed to the ingredients, and each was to receive a portion of the methamphetamine.

During the remainder of the evening and into the early morning hours of March 27, 2012, Parker and another person stripped lithium batteries inside the trailer. Parker asked Randall to go to Kroger to purchase coffee filters and paper towels. Parker told Isom that he needed some of Isom's anhydrous ammonia contained in a propane tank, which he had stolen

and buried in a field located north of the trailer park.  Parker and Isom went into the field to pour the anhydrous ammonia into a pitcher with the solvents and then both moved the propane tank into the woods located west of the trailer park.  The pitcher with the contents was left outside the trailer.  Christopher, in the meantime, drove Brown and Brown's girlfriend to the residence where his father, Brian Cunningham, lived.

Veronica smelled something odd inside the trailer and called Christopher to inform him that she wanted everyone inside the trailer to leave because they were being loud and the children were sleeping.  When Randall, Parker, and Isom left the trailer, Veronica locked the door.  After her phone call, Christopher stopped at a Kroger parking lot and called the White County Sheriff's Department to inform them that a methamphetamine lab was in the field north of the trailer park.  Four or five officers from the Indiana State Police, including Officer Tyler Stinson, were dispatched to the field, but found no methamphetamine lab and came upon an empty hole that smelled like anhydrous ammonia.  Officer Stinson exchanged phone calls with Christopher trying to locate the methamphetamine lab.

Meanwhile, Randall, Parker, and Isom knocked on the trailer without any response.  They drove to Brian's residence to call and ask Christopher to return to the trailer and open the door.  They returned to the trailer and, once Christopher arrived, they all went inside.  Christopher and Veronica decided to go to Wal-Mart so he could call the officers back.  Parker left the trailer sometime after that.  The officers eventually made their way from the field to the trailer.  Officer Stinson spoke to Christopher over the phone while Christopher was at Wal-Mart and was granted permission to enter the trailer.  Once the door was opened,

3

the officers immediately noticed "an odor of starting fluid coming from the house," which they associated with a methamphetamine lab. Id. at 102. The officers found Isom, Randall, Smothers, Engles, and the three children inside. Isom was pretending to be asleep on the couch and was fully clothed with dirt on his pants. They located several ingredients associated with a methamphetamine lab inside the trailer. The officers located the pitcher containing a white substance outside the trailer and the propane tank hidden in the woods.

Christopher and Veronica returned to the trailer and called Brian to have him pick up the children. Brian, while on his way to the trailer, saw Parker walking over a bridge and offered him a ride; Parker declined and said the police were at the trailer, and Brian drove off. Officer Charles Morehead later spotted Parker and detained him. Parker was wearing dirty pants and boots. After confirming his identity, he was transported back to the trailer. The officers investigating the trailer sent the solvents from the pitcher to the lab, which later tested positive for methamphetamine, although the product was unfinished.

Parker was charged with Class B felony manufacturing methamphetamine. A jury trial found him guilty as charged. The trial court sentenced Parker to fifteen years with eleven years executed and recommended a treatment program for his addiction. Parker now appeals.

**Analysis**

*I. Sufficiency of Evidence*

Parker claims there was insufficient evidence to prove that he was manufacturing methamphetamine. When sufficiency of evidence is challenged, "appellate courts must

4

consider only the probative evidence and reasonable inferences supporting the verdict." Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). It is the role of the fact-finder, not the appellate court, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. Id. When confronted with conflicting evidence, appellate courts must consider it "most favorably to the trial court's ruling." Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." Id. at 147. "[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Id.

Parker claims that he was not manufacturing methamphetamine on March 26 or 27, 2012, and the sole evidence used to implicate him is inconsistent testimony from witnesses who were at the trailer. He further alleges that all the witnesses "had reasons to lie about [him], and something to gain by cooperating with the State." Appellant's Br. p. 15. Under the "incredible dubiosity rule," we may "impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted 'inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.'" Young v. State, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012), trans. denied (quoting Rodgers v. State, 422 N.E.2d 1211, 1213 (Ind. 1981)). We will reverse a conviction if a sole witness presents inherently improbable testimony and there is no circumstantial evidence of the defendant's guilt. Id.

Not one, but multiple witnesses implicated Parker as the person who was

5

manufacturing methamphetamine. Christopher identified Parker as the cook and stated that Parker and Isom were cooking "in the woods or in the field." Tr. p. 49. Randall and Isom both testified that Parker was going to show Isom how to wet cook methamphetamine; Randall further indicated that Parker and Isom were the ones "cooking meth" that night. Id. at 164. Isom stated that Parker "brought the lab" to cook methamphetamine that evening. Id. at 181. Veronica indicated that Parker and others were inside the trailer when she "smelled something funny." Id. at 86. Parker's and Isom's dirty jeans and boots were corroborating evidence that they were both mixing the anhydrous ammonia with the solvents in the field.

Parker alleges that each witness had inconsistent or false statements in his testimony and claims that the witnesses should not be believed. Despite any inconsistencies, the testimony regarding Parker's culpability has not shown to be uncorroborated or incredibly dubious, and we will not entertain his invitation to revisit the facts and reweigh the evidence. "Inconsistencies in the testimonies of two or more witnesses go to the weight of the evidence and do not make the evidence 'incredible' as a matter of law." Manuel v. State, 971 N.E.2d 1262, 1271 (Ind. Ct. App. 2012). The jury had an opportunity to assess the credibility of each witness and determined, based on their testimony, that Parker was guilty of manufacturing methamphetamine. The evidence is sufficient to sustain his conviction.

## II. Inappropriate Sentence

We now assess whether Parker's sentence is inappropriate under Appellate Rule 7(B) in light of his character and the nature of the offense. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due

6

consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Parker claims that "the circumstances of this case are fairly typical for cases involving methamphetamine labs" and are "no worse than those involved in any other case[s] of this kind." Appellant's Br. p. 25. However, "[w]e concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about

7

the defendant's character." <u>Wells v. State</u>, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009). A police officer described that the process of manufacturing methamphetamine includes mixing of highly acidic and corrosive chemicals, such as the "very dangerous chemical" anhydrous ammonia. Tr. p. 213. Parker played a key role; he was identified as the cook of the methamphetamine lab and had others assist in the process under his direction. The others who were present contributed to the ingredients; Parker had Randall purchase coffee filters and paper towels to be used in the process; Parker told Isom that he needed some of his anhydrous ammonia to mix the solvents; and Parker stripped lithium batteries with the help of another person. Children were also present during the manufacture of methamphetamine.

Parker next argues that his fifteen-year sentence is inappropriately excessive in light of his character. Parker claims that, despite having a criminal history, mitigating factors which include his young age, his addiction to methamphetamine and other drugs, and his request to receive drug treatment, should outweigh the aggravating factors. We disagree. This is Parker's second Class B felony conviction involving methamphetamine, the first being conspiracy to deal methamphetamine, in which he was given the minimum sentence. He has a prior misdemeanor conviction and two juvenile convictions. He committed the current offense while he was on probation, which further illustrates his indifference to the criminal justice system. Parker did not receive the twenty-year maximum sentence for a Class B felony conviction. He, instead, was appropriately given a fifteen-year sentence with eleven years executed, and recommended to a treatment program for his methamphetamine addiction.

8

**Conclusion**

The testimony of the State's witnesses was not incredibly dubious, and sufficient evidence existed to prove that Parker was manufacturing methamphetamine. The sentence is not inappropriate given Parker's criminal history and his principal role in manufacturing the methamphetamine. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.