## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
May 14 2015, 8:32 am
*Kevin S. Smith*
**CLERK**
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Gary L. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy Lee Hyser,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 14, 2015

Court of Appeals Case No.
20A05-1410-CR-487

Appeal from the Elkhart Circuit Court.
The Honorable Terry Shewmaker, Judge.
Cause No. 20C01-1206-FA-32

**Baker, Judge.**

Timothy Hyser appeals his convictions for class A felony Child Molesting[1] and class C felony Child Molesting.[2] Hyser argues that the trial court erred when it denied his request to inspect J.M.'s mental health records and that there was insufficient evidence to support the convictions. Finding no error, we affirm.

## Facts

In 2011, Hyser lived next door to six-year-old J.M., his mother, Joni Miller, and her boyfriend, Mark Marner. Marner was a registered sex offender. Hyser and Marner became friends, and Miller and Marner often trusted Hyser to watch J.M. after school.

In early 2011, J.M. told Miller that Hyser had put his penis in J.M.'s mouth. However, Miller did not believe J.M. because he did not seem upset. Later in 2011, J.M. told Miller that Hyser made him look at pictures of naked people. When Miller confronted Hyser, Hyser admitted that J.M. had found a pornographic magazine that Hyser kept under the couch. In December 2011, J.M. cried and told Miller that Hyser had again put his penis in J.M.'s mouth. Miller did not report these allegations to the police or to the Department of Child Services (DCS).

Hyser himself called DCS on December 27, 2011. He later spoke with a case worker and explained that there was a possibility that J.M. had been sexually

---

[1] Ind. Code § 35-42-4-3(a)(1).

[2] I.C. § 35-42-4-3(b).

abused. He told the case worker that J.M. had recently accused him of some sexually inappropriate behavior including "oral sex" and "things being stuck in [J.M.'s] butt." Tr. p. 234. He also told the case worker that he believed Marner beat J.M. and that he had seen Miller slap J.M. That same day, DCS contacted Miller and asked to interview J.M.

[5] Forensic interviewer Anne Kobold interviewed J.M. In addition, DCS contacted the Elkhart Police Department, and Detective Charles Osterday investigated the case and attended the forensic interview. Detective Osterday watched the interview from a separate room, and learned that J.M. had been sexually abused by Hyser, not by Marner. After the interview, Detective Osterday spoke with Miller, and told her that J.M. had accused Hyser of sexual abuse, including fondling and oral and anal sex. Detective Osterday then interviewed Miller and Marner.

[6] On January 6, 2012, Detective Osterday called Hyser and asked if he could come speak with Hyser at his home. Hyser agreed, and Detective Osterday conducted a recorded interview with Hyser. Hyser denied having oral sex with J.M. He also told the detective that he was fifty-three years old and gave him the names of individuals he stated would have information to help the detective in his investigation. Detective Osterday interviewed all but one of those individuals.

[7] On June 13, 2012, the State charged Hyser with class A felony child molesting and class C felony child molesting. On November 28, 2012, a jury found Hyser

guilty as charged. On December 7, 2012, the trial court sentenced Hyser to an aggregate term of thirty years. Hyser appealed, and, on October 17, 2013, this Court reversed Hyser's convictions, finding that he had not been given a meaningful opportunity to present a complete defense. *Hyser v. State*, 996 N.E.2d 443, 450 (Ind. Ct. App. 2013).

[8]     A second jury trial began on July 28, 2014. During the retrial, J.M. testified that Hyser made him do "inappropriate stuff" with Hyser's penis, and testified that Hyser made him "wiggle it" and "suck it." Tr. p. 200. He testified that Hyser made him make a "cupped hand motion around the penis up and down," and "[o]ne time white stuff came out, and it was disgusting." *Id.* at 301. J.M. also testified that once "that white stuff" came out of Hyser's penis while it was in his mouth. *Id.* at 302. J.M. also testified that Hyser put his penis "up my bottom." *Id.* at 303. J.M., who had not seen Hyser in three years, testified that he would be unlikely to recognize Hyser. While J.M. could not identify Hyser in open court, he did describe Hyser as he appeared at the time he lived next door to J.M., testifying that Hyser had a white beard, white curly hair, and glasses.

[9]     At one point during the cross-examination of Miller on retrial, defense counsel asked Miller if J.M. had spoken with a counselor at Oaklawn. The prosecutor objected, stating that any communication between J.M. and a counselor was confidential, that the information was irrelevant, and that Miller had no firsthand knowledge of any such communication, which would make the statements inadmissible on hearsay grounds. The trial court asked defense

counsel for what purpose the evidence was being offered, at which point defense counsel requested an in camera inspection of J.M.'s counseling records because "there's possibly some exculpatory information in that report." *Id.* at 117. The trial court sustained the State's objection and did not conduct an in camera inspection.

On July 13, 2014, the jury found Hyser guilty as charged. On October 9, 2014, the trial court sentenced Hyser to thirty years on the class A felony child molesting conviction and to four years on the class C felony child molesting conviction. The sentences were ordered to be served concurrently. Hyser now appeals.

# Discussion and Decision

## I. J.M.'s Counseling Records

Hyser first argues that the trial court erred when it did not inspect J.M.'s counseling records in camera. He also maintains that the State's failure to provide him with the records violated *Brady v. Maryland*, 378 U.S. 83 (1963), because the records might have contained exculpatory evidence.

Hyser's first contention is that the trial court was required to make an in camera inspection of J.M.'s counseling records. Hyser argues that the State should have allowed him to inspect the records, but does not argue or point us to any evidence to show that he ever made a formal discovery request for the documents from Oaklawn or the State. Rather, Hyser argues that the trial court should have allowed him to view the records in camera or should have

inspected the record itself. However, we will not hold that the trial court erred in refusing to make an in camera inspection or refusing to allow Hyser to do so when it appears that Hyser did not avail himself of the discovery procedures available to him. Therefore, this argument fails.

[13] Alternatively, Hyser contends that the State committed a *Brady* violation when it failed to provide him with J.M.'s counseling records. In *Brady v. Maryland*, the Supreme Court of the United States held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In order to prevail on a claim that the prosecution failed to disclose exculpatory evidence, a defendant must show that 1) the prosecution suppressed evidence, 2) the evidence was favorable to the defense, and 3) the evidence was material to an issue at trial. *Conner v. State*, 711 N.E.2d 1238, 1245-46 (Ind. 1999). In addition, "[a] reviewing court will find that the prosecution should have disclosed evidence when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 1246 (quoting *U.S. v. Bagley*, 473 N.E.2d 667, 680 (1985)). The State will not be found to have suppressed material information if that information was available to a defendant through the exercise of reasonable diligence. *Id.*

[14] Here, Hyser has entirely failed to show that J.M.'s counseling records were favorable to the defense. Hyser only states that the records would have shown

that J.M. did not have a good relationship with Marner and that J.M. thought Marner was a "villain." Appellant's Br. p. 11. Even if we accept this as true, it does not establish that the records were exculpatory or favorable to the defense. We certainly cannot say, based on the above claim, that the result of the proceeding would have been different or that the records were material. Therefore, this argument must fail.

## II. Sufficiency of the Evidence

Hyser also argues that there was insufficient evidence to support his convictions. When reviewing the sufficiency of the evidence supporting a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* When we are confronted with conflicting evidence, we consider the evidence most favorable to the trial court's ruling. *Id.* We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Therefore, it is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.* at 147.

To prove that Hyser was guilty of class A felony child molesting, the State was required to show that Hyser was at least twenty-one years of age, and that he

knowingly or intentionally performed or submitted to sexual intercourse or deviate sexual conduct with a child under fourteen years of age. Ind. Code § 35-42-4-3(a)(1).[3] To prove that Hyser was guilty of class C felony child molesting, the State was required to show that he performed or submitted to any fondling or touching of a child with intent to arouse or to satisfy the sexual desires of himself or the the child. I.C. § 35-42-4-3(b).

[17] Hyser first argues that there was insufficient evidence because J.M. was unable to identify him at trial. He states that there was never an in-person identification, nor was there evidence of a photographic identification presented to the jury. Hyser, however, points us to no legal authority that requires the victim in a child molesting case to identify a defendant in order for a jury to be able to find a defendant guilty. Here, when J.M. was asked whether he would be able to identify Hyser, he stated that it was unlikely. However, he was able to describe Hyser as he had looked when J.M had known him three years earlier. It is not unreasonable that a child of nine might not be able to identify a man he had known three years earlier, when he was six. This argument is merely a request to reweigh the evidence, a request we decline.

[18] Hyser also maintains that testimony of both Miller and Marner was incredibly dubious. Under the "incredible dubiosity rule" we may "impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted

---

[3] Indiana Code section 35-42-4-3 has been revised since the time that Hyser committed these offenses. We cite to the statue as it read at the time Hyser committed the offenses.

'inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.'" *Rodgers v. State*, 422 N.E.2d 1211, 1213 (Ind. 1981). We will reverse a conviction if the sole witness presents inherently improbable testimony and there is no circumstantial evidence of the defendant's guilt. *White v. State*, 706 N.E.2d 1078, 1079-80 (Ind. 1999). Further, we will overturn a conviction based upon the incredible dubiosity rule when the testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. *Baumgartner v. State*, 891 N.E.2d 1131, 1138 (Ind. Ct. App. 2008).

[19] Here, we note that the incredible dubiosity rule applies when there is a "sole witness." *Rodgers*, 422 N.E.2d at 1213. That is simply not true in the instant case, inasmuch as seven witnesses testified for the State at trial. Moreover, Hyser does not claim that J.M.'s testimony is incredibly dubious. Thus, the incredible dubiosity rule does not apply, and this argument must fail.

[20] In the instant case, fifty-three-year-old Hyser was charged with molesting six-year-old J.M. J.M. testified that Hyser was his neighbor and described Hyser as he looked at the time of the molestations. He also testified that Hyster made him perform oral sex, made him do "inappropriate stuff" with Hyser's penis, and made him "wiggle it" and "suck it." Tr. p. 200. J.M. also testified that "that white stuff" came out of Hyser's penis while it was in his mouth. *Id.* at 302. Additionally, J.M. testified that Hyser made him make a "cupped hand motion around the penis up and down," and "[o]ne time white stuff came out, and it was disgusting." *Id.* at 301. In addition, J.M. testified that, on another

occasion, Hyser put his penis "up my bottom." *Id.* We note that a conviction for child molesting may rest solely upon the uncorroborated testimony of the victim. *Link v. State*, 648 N.E.2d 709, 713 (Ind. Ct. App. 1995). Here, the testimony of J.M. was sufficient to allow a reasonable jury to conclude that Hyser was guilty of class A felony child molesting and class C felony child molesting beyond a reasonable doubt.

[21] The judgment of the trial court is affirmed.

Najam, J., and Friedlander, J., concur.