## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 22 2020, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
– Appellate Division

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tina L. Mann
Samantha M. Sumcad
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ken Gunn, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 22, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-2346 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Lisa F. Borges, Judge <br><br> Trial Court Cause No. <br> 49G04-1810-F1-34611 |

**Mathias, Judge.**

[1] Following a jury trial in Marion Superior Court, Ken Gunn, Jr. ("Gunn") was convicted of one count of Level 1 felony child molesting, one count of Level 1

felony attempted child molesting, five counts of Level 4 felony child molesting, and one count of Class A misdemeanor intimidation. The jury also found Gunn to be an habitual offender. The trial court sentenced Gunn to an aggregate term of ninety-two years of incarceration. Gunn appeals and presents two issues, which we restate as: (1) whether the State presented evidence sufficient to support Gunn's conviction for Level 1 felony attempted child molestation, and (2) whether two of Gunn's convictions for child molesting constitute double jeopardy. Concluding that the evidence is sufficient to support Gunn's conviction for Level 1 felony attempted child molesting but that two of Gunn's convictions constitute double jeopardy, we affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] At the time relevant to this appeal, Gunn and his long-term girlfriend Ni.G. were living together in Marion County, Indiana with their biological children, K.G., N.G., and K.J.G. Gunn's child with another woman, N.W., also lived with the family.

[3] In September 2018, Gunn drove his thirteen-year-old daughter, K.G., and her younger siblings N.G. and K.J.G. to a local convenience store, where he got out of the car and spoke with a woman for some time. He then returned to the car and parked the car in a different part of the parking lot. When K.G.'s younger siblings fell asleep, Gunn pulled up his daughter's shirt, reached into her bra, and touched her breast. K.G. smacked her father's hand away. After this incident, Gunn drove the children back home.

[4] Later that same month, Gunn drove the same children to a video rental store to rent movies. Again, the younger children fell asleep in the car. When they did, Gunn put his hands inside K.G.'s pants and inserted his finger into her vagina. K.G. told him to stop because it was uncomfortable. Gunn stopped, became angry, and drove away. At around the same time that month, Gunn drove K.G. and her friend home from a softball game one evening. After dropping the friend off at her home, Gunn parked the car in a parking lot and again touched K.G.'s breasts. K.G. told Gunn that she did not like what he was doing, which again caused Gunn to become angry and drive away.

[5] Sometime later in 2018, when Gunn was alone in the car with K.G., he exposed his penis to K.G. and told her to lick it. Tr. Vol. 2, p. 142. K.G. refused, causing Gunn to become angry. Gunn attempted to force K.G.'s head down toward his penis as she pushed him away. In early October 2018, Gunn volunteered to go to the store to get K.G.'s grandmother a drink. The children wanted candy and accompanied Gunn to the gas station convenience store. Again, when the younger children fell asleep, Gunn put his hands down K.G.'s pants and rubbed the outside of her genital area. K.G. wanted to tell her grandmother about Gunn's actions but was afraid to do so because Gunn had warned her not to tell and had threatened to hurt K.G.'s grandmother if K.G. told anyone.

[6] On the evening of October 3, 2018, K.G. went to the bedroom she shared with N.G. and got into the top bunk of the bunk bed. When K.G. got out of bed to use the restroom, Gunn was standing outside of the bathroom door. When

K.G. came out of the bathroom, Gunn followed her back to the bedroom. Gunn stood on the bottom bunk while K.G. got into the top bunk. Gunn tried to grab K.G. while she attempted to pull away. Gunn put his hands inside of K.G.'s pants and inserted his finger into her vagina. K.G.'s mother, Ni.G., then came into the bedroom and saw Gunn's hand moving toward K.G.'s pajama shorts. Ni.G. then pulled Gunn off the bed, struck him in the mouth, and asked if she was "touching on [her] daughter." Tr. Vol. 2, p. 94.

[7] Ni.G. noticed that K.G. had been crying and asked if Gunn had touched her. Gunn told K.G. to "shut the f**k up," and warned her that she "better not say nothing." *Id*. at 97, 130. K.G. admitted to her mother that Gunn had been touching her. Ni.G. told one of the other children to telephone the police. Gunn then pushed his way out of the bedroom, exited through the patio doors, and jumped off the second floor balcony and ran away.

[8] On October 9, 2018, the State charged Gunn with two counts of Level 1 felony attempted child molesting, two counts of Level 1 felony child molesting, five counts of Level 4 felony child molesting, and one count of Class A misdemeanor intimidation. The State later added an allegation that Gunn was an habitual offender.

[9] A jury trial was held on August 5–6, 2019. At the conclusion of the trial, the jury found Gunn guilty of one count of Level 1 felony attempted child molesting, one count of Level 1 felony child molesting, five counts of Level 4 felony child molesting, and Class A misdemeanor intimidation. The jury also

found that Gunn was an habitual offender. The trial court sentenced Gunn on September 30, 2019, to an aggregate term of ninety-two years of incarceration. Gunn now appeals.

## *I. Sufficiency of the Evidence*

Gunn first argues that the evidence was insufficient to support his conviction for Level 1 felony attempted child molesting. When addressing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *McAllister v. State*, 91 N.E.3d 554, 558 (Ind. 2018). We instead look only to the evidence most favorable to the verdict, along with all reasonable inferences to be drawn from that evidence. *Id.* If there is substantial evidence of probative value to support the verdict, and the evidence could have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt, we will not disturb the verdict. *Barger v. State*, 587 N.E.2d 1304, 1306 (Ind. 1992).

"A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits child molesting, a Level 3 felony." Ind. Code § 35-42-4-3(a). The offense is elevated to a Level 1 felony if "it is committed by a person at least twenty-one (21) years of age[.]" *Id.* § 3(a)(1). "Other sexual conduct" is defined to include "an act involving . . . a sex organ of one (1) person and the mouth or anus of another person[.]" Ind. Code § 35-31.5-2-221.5(1). Furthermore, "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the

crime." Ind. Code § 35-41-5-1(a). And "an attempt to commit a crime is a felony or misdemeanor of the same level or class as the crime attempted." *Id.*

[12] Thus, to convict Gunn of Level 1 felony attempted child molesting, the State was required to prove that Gunn, a person over the age of twenty-one, knowingly or intentionally took a substantial step toward performing or submitting to an act involving his sex organ and the mouth of K.G., a child under the age of fourteen. Here, K.G. testified that Gunn exposed his penis to her, told her to lick it, and attempted to push her head toward his penis when she refused. K.G.'s uncorroborated testimony is sufficient by itself to support Gunn's conviction for Level 1 felony attempted child molesting. *See Young v. State*, 973 N.E.2d 1225, 1227 (Ind. Ct. App. 2012) (noting the longstanding rule that a conviction for child molesting may rest on the uncorroborated testimony of the victim) (citing *Barger*, 587 N.E.2d at 1308), *trans. denied*.

[13] Nevertheless, Gunn insists that K.G.'s testimony regarding the incident that led to his conviction for Level 1 felony attempted child molesting cannot be believed because it was incredibly dubious. Under the "incredible dubiosity" rule, a reviewing court may "impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted 'inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.'" *Id.* at 1226 (quoting *Rodgers v. State*, 422 N.E.2d 1211, 1213 (Ind. 1981)). Under this rule, we may reverse a conviction if a sole witness presents incredibly dubious or inherently improbable evidence such that no reasonable

person could believe it and if there is a complete lack of circumstantial evidence. *Id.* (citing *White v. State,* 706 N.E.2d 1078, 1079–80 (Ind. 1999)).

[14] Gunn notes that, with regard to the incident where her father attempted to force her head toward his penis, K.G. testified at a pre-trial deposition that she "d[id]n't think so," when asked if she had seen her father's genitals. Tr. Vol. 2, p. 158. But at trial, K.G. testified that she had seen her father's "nuts," "dick," or "thing." *Id*. at 143–44. Gunn claims that these two versions of events are irreconcilable, and that, given the uncorroborated nature of K.G.'s testimony, renders her testimony incredibly dubious. We disagree.

[15] "The fact that a witness gives trial testimony that contradicts earlier pre-trial statements does not necessarily render the trial testimony incredibly dubious." *Young,* 973 N.E.2d at 1226–27 (citing *Murray v. State,* 761 N.E.2d 406, 409 (Ind. 2002)). Moreover, there is nothing inherently improbable about K.G.'s testimony such that no reasonable person could believe it. In short, there is nothing incredibly dubious about K.G.'s testimony, and the jury could reasonably conclude that, based on her testimony, Gunn committed Level 1 felony attempted child molesting.

### II.  *Double Jeopardy*

[16]    Gunn next claims that his convictions on Counts VII and VIII, as amended at trial,[1] constitute double jeopardy under the actual evidence test. Under the actual evidence test announced in *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999), to establish a violation of the double jeopardy clause of the Indiana Constitution, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. Application of this test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective. *Singh v. State*, 40 N.E.3d 981, 986 (Ind. Ct. App. 2015) (citing *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008)), *trans. denied*. In determining whether two or more convictions constitute double jeopardy under the actual evidence test, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. *Id.* The term "reasonable possibility" turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions. *Id.*

[17]    In the present case, amended Count VII alleged:

---

[1] At trial, the State dismissed the original Count VI, causing original counts VII, VIII, IX, and X to be renumbered for the jury as VI, VII, VIII, and IX, respectively. The abstract of judgment, however, still refers to the counts according to their original numbering.

On or about September 23, 2018, Ken Gunn, Jr., a person at least twenty-one (21) years of age, did perform other sexual conduct (as defined in Indiana Code Section 35-31.5-2-221.5) with [K.G.], a child under the age of fourteen years (14), to-wit, twelve (12) years old.

Appellant's App. p. 134. Amended Count VIII alleged that:

On or about September 23, 2018, Ken Gunn, Jr., a person at least twenty-one (21) years of age, did perform fondling or touching with [K.G.], a child under the age of fourteen years (14), to-wit, twelve (12) years old, with the intent to arouse or satisfy the sexual desires of Ken Gunn, Jr., or [K.G.].

*Id*.

[18] The acts supporting both of the convictions under these counts occurred on the same date,[2] and were based on the same incident where Gunn took the children to the video store. With regard to this incident, K.G. testified at trial as follows:

A. I was talking to a friend and then that's when, I guess, she might have [fell] asleep because she stopped texting back. So that's when he had put his hands in my pant[s] and he started, like, messing with my vagina.

Q. And when you say messing with your vagina, can you describe for the jurors what that means?

---

[2] The charging information alleged that the acts in question occurred "on or about September 23, 2018." Appellant's App. p. 134. K.G.'s testimony, however, indicated that the incident occurred on September 26, 2018. Tr. Vol. 2, pp. 135–36. Gunn raises no argument about this variance between the information and the proof adduced at trial. And it has long been held that time is not of the essence to a charge of child molesting. *Gaby v. State*, 949 N.E.2d 870, 876 (Ind. Ct. App. 2011).

A.     Uhm, he was messing with, like the inside of it.

Q.     And when you say "messing with the inside of it," what parts on his body were connecting with what parts on your body, if that question[] makes sense?

A.     His finger.

Q.     And his finger was where?

A.     On my vagina.

Q.     When you say on your vagina, what do you mean?

A.     The inside.

Q.     The inside?

A.     Yeah.

Q.     And when this was happening, do you remember anything about — what did that — what did that — uhm, what did that feel like? Do you remember anything about that?

A.     Weird.

Tr. pp. 136–37.

[19]     During the State's closing argument, the prosecuting attorney attempted to distinguish the evidence supporting Count VII from that supporting Count VIII, stating to the jury:

Count VII is the incident that I just described. The molest at the Family video. She said — K.G.'s testimony was, again, while it's still dark, sitting out there in the parking lot, testimony was "for a long time," the defendant starts messing round with her vagina. I had to ask her, K.G., what does that mean? What do you mean messing around with your vagina? You saw her demeanor. She's

talking about the incident and just as she gets close and having to talk about what she has to talk about, she gets quiet, a little more withdrawn, but she answers the question that she's asked. "He put his finger in my vagina." That is her testimony. She said she was on the phone texting a friend, she remembers everything that happened around it. Her friend must have fallen asleep because there was no more texting. And then, uh, she also said that her siblings were asleep in the backseat of the car. **Count VIII. This is also for the Family Video. For what he was doing with her vagina, quite frankly, before he put his finger in it. Messing around with the vagina before the finger actually goes in.**

Tr. Vol. 2, p. 225 (emphasis added).

[20] On appeal, the State similarly argues that the actual evidence supporting Count VII was K.G.'s testimony that Gunn inserted his finger into her vagina, whereas the evidence supporting Count VIII was K.G.'s testimony that Gunn "started . . . messing with my vagina." Tr. Vol. 2, p. 136. Based on this evidence, and the prosecuting attorney's argument distinguishing these acts, the State argues that the jury relied on evidence of penetration separate from the evidence of fondling to convict Gunn of Counts VII and VIII. We agree with Gunn.

[21] K.G. did not testify that Gunn started "messing around" with her vagina, then separately inserted his finger into her vagina. Instead, she testified that Gunn started "messing around" with her vagina, and when asked what she meant by "messing with [her] vagina," K.G. explained that Gunn was "messing with . . . the inside of it," using his finger. Tr. pp. 136–37. In other words, K.G.'s testimony regarding the "messing around" and the digital penetration describe

the very same act. We therefore conclude that there was a reasonable probability that the jury relied on the same actual evidence to support Gunn's convictions on both Count VII and VIII.[3] To remedy this double-jeopardy violation, we reverse Gunn's conviction on the lesser offense of Level 4 felony child molesting and remand with instructions that the trial court vacate the judgment of conviction and the sentence entered on this count.[4]

## Conclusion

The State presented sufficient evidence to support Gunn's conviction for Level 1 felony attempted child molesting. However, we agree with Gunn that his convictions on amended Counts VII and VIII constitute double jeopardy. We therefore reverse his conviction on amended Count VIII and remand with instructions that the trial court vacate the judgment of conviction and the sentence entered on this count.

Affirmed in part, reversed in part, and remanded.

Riley, J., and Tavitas, J., concur.

---

[3] We also note that, under the series of rules of statutory construction and common law that are often described as "double jeopardy," Gunn's convictions on both Counts VII and VIII constitute, "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quoting *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)). That is, under either the common-law test, or the actual evidence test, Gunn's convictions on both of these counts cannot stand.

[4] The trial court ordered Gunn's six-year sentence on amended Count VIII to be served concurrently with the thirty-year sentenced imposed on amended Count VII. Tr. Vol. 3, pp. 63–64. Thus, Gunn's aggregate sentence should remain the same even after his sentence on amended Count VIII is vacated.